# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
October 2, 2012 Session in Nashville

## ARTIS WHITEHEAD v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 03-04835      James C. Beasley, Jr., Judge**

---

**No. W2010-00784-SC-R11-PC - Filed March 21, 2013**

---

Tennessee prisoners whose convictions and sentences are upheld on appeal have one year to file a petition for post-conviction relief to challenge their convictions and sentences. This appeal involves the narrow circumstances in which fundamental fairness demands the tolling of this deadline. A prisoner filed his petition for post-conviction relief after the statutory deadline had passed because his former attorney provided him the wrong deadline date and failed to give the prisoner his legal files until after the actual deadline had passed. Following a hearing, the Criminal Court for Shelby County dismissed the petition as untimely. The Court of Criminal Appeals affirmed. *Whitehead v. State*, No. W2010-00784-CCA-R3-PC, 2011 WL 3912856 (Tenn. Crim. App. Sept. 7, 2011). We granted the prisoner's application for permission to appeal. We find that the facts of this case reflect that the prisoner was effectively abandoned by his appellate attorney after his petition for writ of certiorari was filed in the United States Supreme Court. This abandonment impeded the prisoner's otherwise diligent efforts to file a timely post-conviction petition. Therefore, the statute of limitations should be tolled. We reverse the judgment of the Court of Criminal Appeals, and remand the prisoner's case to the trial court so the prisoner may pursue his petition for post-conviction relief.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which GARY R. WADE, C.J., CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined. JANICE M. HOLDER, J., filed a dissenting opinion.

Sean G. Hord, Memphis, Tennessee, for the appellant, Artis Whitehead.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Aaron E. Winter, and Cameron L. Hyder, Assistant Attorneys General; William L. Gibbons, District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.**

On May 9, 2002, Artis Whitehead attempted to rob the safe at B.B. King's Restaurant and Blues Club in Memphis. He did not succeed. Before he fled the scene, however, he detained five persons in the restaurant's basement office where the safe was located, robbed four of them, and seriously injured two of them. In November 2003, a Shelby County jury convicted Mr. Whitehead of five counts of especially aggravated kidnapping, two counts of aggravated assault, two counts of especially aggravated robbery, two counts of aggravated robbery, and one count of attempted robbery. The trial court sentenced Mr. Whitehead to consecutive sentences totaling 249 years. These convictions and sentences were upheld on direct appeal. *State v. Whitehead*, No. W2004-03058-CCA-R3-CD, 2006 WL 1273749, at *1 (Tenn. Crim. App. May 10, 2006), *perm app. denied* (Tenn. Oct. 16, 2006), *cert. denied*, 549 U.S. 1269 (2007).

Following his conviction, Mr. Whitehead retained new counsel to represent him during sentencing and on appeal. As far as this record shows, Mr. Whitehead seems to have lost contact with his appellate lawyer while his case was pending before the United States Supreme Court. Even though the United States Supreme Court denied Mr. Whitehead's petition for writ of certiorari on March 5, 2007, his appellate lawyer did not communicate with him about the case until she sent Mr. Whitehead a letter dated August 3, 2007. This letter stated:

> Dear Mr. Whitehead,
>
> I hope that you are doing well and that your family is well also. In reviewing our appellate files, I noticed that we have not received direction from you regarding your file. Your file cannot be provided to anyone other than you unless we have your written permission. Therefore, although we are closing your file because we no longer represent you, when **you advise this office in writing** as to whom your file can be forwarded we will be happy to do so.

I also would like to remind you that the denial by the United States Supreme Court of your Writ of Certiorari means that if you intend to file a post conviction petition, **this must be done by March 5, 2008**. It has been a pleasure assisting you these past years, Mr. Whitehead[,] and we wish you the best.

This seemingly innocuous letter was actually filled with mischief for Mr. Whitehead because the March 5, 2008 deadline for filing a petition for post-conviction relief stated in the letter was incorrect. Under Tenn. Code Ann. § 40-30-102(a) (2012), a petition for post-conviction relief must be filed

> within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred.

The "final action of the highest state appellate court" occurred on October 16, 2006, when this Court denied Mr. Whitehead's appeal. Thus, the actual deadline for filing a petition for post-conviction relief was October 16, 2007. Mr. Whitehead's appellate lawyer erroneously calculated the deadline from the date the United States Supreme Court denied his petition for writ of certiorari.

On August 20, 2007, Mr. Whitehead replied to his appellate lawyer in a handwritten letter. He asked her to ship his files to him at the Hardeman County Correctional Facility. The lawyer received the letter but did not send Mr. Whitehead the files. On September 21, 2007, Mr. Whitehead sent his appellate lawyer a second letter, "respectfully requesting" that she send him his case files so he could "perfect [his] Petition for Post-Conviction Relief." Again, the lawyer received the letter but did not immediately send the files to Mr. Whitehead. At a later hearing, Mr. Whitehead testified that his files did not arrive until "the last week or so of October" or perhaps "the beginning of November." By this time, unbeknownst to Mr. Whitehead, the deadline for filing his post-conviction petition had already passed.

As soon as he received his files, Mr. Whitehead began preparing his petition for post-conviction relief. On March 3, 2008, he submitted his 32-page petition to prison authorities for mailing. The petition was filed on March 19, 2008. One week later, on March 26, 2008, the Criminal Court for Shelby County summarily dismissed the petition as untimely. Even though Mr. Whitehead filed his petition prior to the erroneous deadline provided by his appellate lawyer, his petition was actually filed 138 days late.

Mr. Whitehead, still representing himself, appealed the dismissal of his petition. The Court of Criminal Appeals determined that

> while the petition was untimely, further development of the record is necessary to determine whether counsel's advice regarding the limitations period constituted "misrepresentation, either attributable to deception or other misconduct," *see Williams v. State,* 44 S.W.3d 464, 469 (Tenn. 2001), that necessitated due process-based tolling of the limitations period.

*Whitehead v. State*, No. W2008-00815-CCA-R3-PC, 2009 WL 723849, at *1 (Tenn. Crim. App. Mar. 19, 2009), *app. dismissed* (Tenn. Aug. 31, 2009). On remand, the post-conviction court appointed counsel to represent Mr. Whitehead.

The post-conviction court held an evidentiary hearing on March 5, 2010. The lawyer who represented Mr. Whitehead during his sentencing and on his direct appeal testified first. She was unable to explain how she had miscalculated the deadline for filing Mr. Whitehead's petition for post-conviction relief. "[C]learly that's my handwriting," she said, "and the language in the letter is mine. But why did I say that? I wish I knew so I would never, ever, ever get close to making that kind of mistake with somebody's life again." The lawyer also testified that she did not intend to mislead Mr. Whitehead by giving him the wrong deadline date and that the miscalculation was an accident.

Although the lawyer could not specifically remember talking to Mr. Whitehead about his post-conviction rights, she testified that her standard practice was to explain post-conviction procedures to her clients. She testified that she generally informed her clients about the timetable for filing for post-conviction relief and that she generally told them that her firm would not be filing a post-conviction petition due to the apparent conflict of interest.[1]

---

[1] *See Frazier v. State*, 303 S.W.3d 674, 682 (Tenn. 2010) ("[A]n attorney in a post-conviction proceeding who has represented the same petitioner on direct appeal has a clear conflict of interest."). Nevertheless, the American Bar Association encourages criminal defense attorneys to provide a bit of parting post-conviction advice to their clients.

> After a conviction is affirmed on appeal, appellate counsel should determine whether there is any ground for relief under other post-conviction remedies. If there is a reasonable prospect of a favorable result, counsel should explain to the defendant the advantages and disadvantages of taking such action. Appellate counsel is not obligated to represent the defendant in a post-conviction proceeding unless counsel has agreed to do so. In other

(continued...)

The lawyer's testimony reflected her understanding that she was not representing Mr. Whitehead when she sent him the August 3, 2007 letter containing the wrong deadline. She said that when she wrote the letter, "there probably wasn't a contractual agreement at that point in time because we had only been retained for appeal and the [direct] appeal was over." She agreed that she "technically" stopped representing Mr. Whitehead on March 5, 2007, when the United States Supreme Court denied Mr. Whitehead's petition for certiorari.

Mr. Whitehead testified that he did not recall any conversation with his lawyers about post-conviction relief. When he received his appellate lawyer's August 3, 2007 letter, he went to the prison's law library to "find out what [post-conviction] was." Although Mr. Whitehead "kept reading and reading and reading and reading and asking a lot of questions" about post-conviction relief, he testified that he trusted the erroneous deadline in the attorney's letter because "she was my lawyer." Although he had prior criminal convictions, Mr. Whitehead testified that he had never filed for post-conviction relief before.

The post-conviction court ruled from the bench at the close of the proof. The court decided that there was no longer an attorney-client relationship between Mr. Whitehead and his former lawyer as of March 5, 2007, when the United States Supreme Court denied the petition for writ of certiorari. The court also decided that Mr. Whitehead was not entitled to relief from the post-conviction statute of limitations under *Williams v. State*, 44 S.W.3d 464 (Tenn. 2001) for two reasons. First, the court concluded that the incorrect filing deadline Mr. Whitehead received from his former lawyer was not the result of "intentional misconduct." Second, the court noted that Mr. Whitehead was aware by the time he received the August 3, 2007 letter that he was no longer represented and that he could have filed a petition for post-conviction relief on his own before the actual October 16, 2007 deadline. Even though the post-conviction court found that Mr. Whitehead was not entitled to relief from the filing deadline, the court "encourage[d]" Mr. Whitehead to appeal because the case involved "some law that needs to be looked at."

Mr. Whitehead appealed again. The Court of Criminal Appeals, relying on our decision in *Williams v. State*, found that accidental attorney error is not a circumstance beyond the petitioner's control that would trigger due process tolling. The appellate court also pointed out that "[t]he record does not show anything that would have impeded the

---

[1](...continued)
respects, the responsibility of a lawyer in a post-conviction proceeding should be guided generally by the standards governing the conduct of lawyers in criminal cases.

ABA Criminal Justice Standard 4-8.5, *available at* http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_dfunc_blkold.html. When a lawyer elects to provide such advice, of course, the lawyer should strive to do no harm.

petitioner's ability to begin preparing for post-conviction proceedings before he received the August 3 letter from counsel, *i.e.* nothing prevented him from researching the law or requesting that counsel send him his file." *Whitehead v. State*, No. W2010-00784-CCA-R3-PC, 2011 WL 3912856, at *5 (Tenn. Crim. App. Sept. 7, 2011). We granted Mr. Whitehead's application for permission to appeal.

## II.

Appellate courts review a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011). Issues regarding whether due process required the tolling of the post-conviction statute of limitations are mixed questions of law and fact and are, therefore, subject to de novo review. *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011) (quoting *Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010)).

However, appellate courts are bound by the post-conviction court's underlying findings of fact unless the evidence preponderates against them. *Smith v. State*, 357 S.W.3d at 336; *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009). Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999).

In this case, the post-conviction court found (1) that the contractual relationship between Mr. Whitehead and his appellate lawyer ended on March 5, 2007; (2) that Mr. Whitehead knew that his appellate lawyer was no longer his attorney after that point; and (3) that the appellate lawyer's error in calculating the filing deadline was negligent, not intentional. These factual findings are entitled to deference. *See Smith v. State*, 357 S.W.3d at 335-36.

However, the post-conviction court's ultimate conclusion – that due process did not require tolling the statute of limitations under these circumstances – is a question of law. In reviewing that legal conclusion de novo, we find it necessary to add another important fact that the courts below failed to emphasize. The incorrect deadline in the August 3, 2007 letter was not the only thing that undermined Mr. Whitehead's ability to file a timely petition for post-conviction relief. Even if Mr. Whitehead had been provided the correct deadline, his ability to prepare and file a timely petition for post-conviction relief was further impeded by

his appellate lawyer's failure to send his case file to him until after the deadline had actually passed.

### III.

The United States Constitution does not require states to provide post-conviction relief to prisoners who have exhausted their direct appeals. *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987). However, the Tennessee General Assembly has appropriately provided prisoners statutory post-conviction remedies since 1967.[2] The General Assembly reformed these post-conviction procedures when it enacted the Post-Conviction Procedure Act of 1995.[3]

Currently, Tenn. Code Ann. § 40-30-103 directs Tennessee's courts to grant prisoners post-conviction relief when their "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." As previously noted, Tenn. Code Ann. § 40-30-102(a) provides that a petition for post-conviction relief must be filed

> within one (1) year of the date of the final action of the highest
> state appellate court to which an appeal is taken[4] or, if no appeal
> is taken, within one (1) year of the date on which the judgment
> became final, or consideration of the petition shall be barred.[5]

(footnotes added)

---

[2]*See* Act of May 25, 1967, ch. 310, 1967 Tenn. Pub. Acts 801 (codified as amended at Tenn. Code Ann. §§ 40-30-101 to -122 (2012)); *see also* Gary L. Anderson, *Post-Conviction Relief in Tennessee – Fourteen Years of Judicial Administration Under the Postconviction Procedure Act*, 48 Tenn. L. Rev. 605, 608 (1981).

[3]*See* Act of April 26, 1995, ch. 207, 1995 Tenn. Pub. Acts 305.

[4]Mr. Whitehead suggests Tennessee should adopt a rule similar to the one found in 725 Ill. Comp. Stat. Ann. 5/122-1(c) (West 2010), which extends the deadline for filing for post-conviction relief when the prisoner also petitions for a writ of certiorari from the United States Supreme Court, as Mr. Whitehead did, and allows for tolling based on non-culpable negligence. *See People v. Rissley*, 795 N.E.2d 174, 182-84 (Ill. 2003). Post-conviction relief is a statutory remedy. Adopting such a rule in Tennessee would be within the General Assembly's bailiwick, not ours.

[5]Prior to May 10, 1995, the period for filing a petition for post-conviction relief was three years. *See Smith v. State*, 357 S.W.3d at 355.

In addition, Tenn. Code Ann. § 40-30-102(b) states that "[n]o court shall have jurisdiction to consider a petition [for post-conviction relief] filed after the expiration of the limitations period" except in one of three narrow circumstances. These three exceptions include: (1) claims based on a newly recognized constitutional right that applies retroactively, and that are filed within one year of the ruling recognizing that right; (2) claims based on new scientific evidence that proves that the prisoner is innocent of the offense; and (3) claims seeking relief from a sentence that was enhanced because of a previous conviction that was subsequently held to be invalid.[6] Mr. Whitehead does not claim that any of these three statutory exceptional circumstances apply to his case.

In 1996, the General Assembly again amended Tenn. Code Ann. § 40-30-102(a) to ensure that the courts would construe the statute of limitations for post-conviction petitions strictly.[7] Thus, Tenn. Code Ann. § 40-30-102(a) currently provides, in part:

> The statute of limitations shall not be tolled for any reason,
> including any tolling or saving provision otherwise available at
> law or equity. Time is of the essence of the right to file a
> petition for post-conviction relief or motion to reopen
> established by this chapter, and the one-year limitations period
> is an element of the right to file the action and is a condition
> upon its exercise.

On its face, the plain language of Tenn. Code Ann. § 40-30-102(a) would bar Tennessee courts from considering any petition for post-conviction relief that was untimely for any reason other than those listed in Tenn. Code Ann. § 40-30-102(b). However, the General Assembly may not enact laws that conflict with the Constitution of Tennessee or the Constitution of the United States. Both this Court and the United States Supreme Court have recognized that fundamental due process[8] requires that, once the legislature provides prisoners with a method for obtaining post-conviction relief, prisoners must be afforded an

---

[6]Tenn. Code Ann. § 40-30-102(c) also provides that previously denied petitions for post-conviction relief may be reopened if one of the three circumstances is found to exist.

[7]*See* Act of Apr. 25, 1996, ch. 995, 1996 Tenn. Pub. Acts 753.

[8]*See* U.S. Const. amend. XIV, § 1 ("No State shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); Tenn. Const. art. I, § 8 ("[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."); U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law . . . .").

opportunity to seek this relief "at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982)).

With regard to due process, this Court has recognized that

> "Due process is flexible and calls for such procedural protections as the particular situation demands." The flexible nature of procedural due process requires an imprecise definition because due process embodies the concept of fundamental fairness. In determining what procedural protections a particular situation demands, three factors must be considered: (1) the private interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute safeguards; and finally, (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Seals v. State*, 23 S.W.3d 272, 277 (Tenn. 2000) (citations omitted); *cf. United States v. Lovasco*, 431 U.S. 783, 790 (1997) (explaining that due process embodies "fundamental conceptions of justice" and "the community's sense of fair play and decency" (quoting *Rochin v. California*, 342 U.S. 165, 173 (1952))).

In the post-conviction context, this Court has explained that the private interest at stake is "a prisoner's opportunity to attack his conviction and incarceration on the grounds that he was deprived of a constitutional right during the conviction process." The government's interest is "the interest in preventing the litigation of stale and groundless claims," coupled with concerns about "the costs to the State of continually allowing prisoners to file usually fruitless post-conviction petitions." *Burford v. State*, 845 S.W.2d at 207. The remainder of the analysis focuses on "the risk of erroneous deprivation" of the prisoner's interest, and safeguards that may be necessary to protect that interest.

To date, this Court has identified three circumstances in which due process requires tolling the post-conviction statute of limitations. The first circumstance involves claims for relief that arise after the statute of limitations has expired. In *Burford v. State*, this Court established that, although the statute of limitations in the Post-Conviction Procedure Act was "not unconstitutional on its face," under certain circumstances, the statute of limitations could deny prisoners "due process under the state and federal constitutions." *Burford v.*

*State*, 845 S.W.2d at 205. In *Burford*, the prisoner "found himself caught in a procedural trap." *Burford v. State*, 845 S.W.2d at 208. The prisoner's sentence was lengthened on account of several prior convictions that were later declared invalid. Because these convictions had not been overturned until after the statute of limitations had expired, the statutory filing deadline would have unfairly denied the prisoner relief. *Burford v. State*, 845 S.W.2d at 210.

In *Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995), we revisited *Burford* and established a three-step test for determining whether a petitioner's grounds for relief are "later-arising," and whether those later-arising claims warrant tolling the statute of limitations. The 1995 version of the Post-Conviction Procedure Act now contains explicit exceptions to the one-year filing deadline that apply to some, but not all, forms of later-arising claims. Tenn. Code Ann. §§ 40-30-117(a)(1)-(3), -102(b)(1)-(3).

The second due process basis for tolling the statute of limitations involves prisoners whose mental incompetence prevents them from complying with the statute's deadline. In *Seals v. State*, we held that "a petitioner who is mentally incompetent is denied an opportunity to raise a claim in a meaningful manner unless the statute of limitations is tolled during the period of mental incompetence." *Seals v. State*, 23 S.W.3d at 279; *see also Reid v. State*, ___ S.W.3d ___, 2013 WL 265981 at *9 (Tenn. Jan. 24, 2013); *State v. Nix*, 40 S.W.3d 459, 462 (Tenn. 2001).

The third exception is the one at issue in this case. In *Williams v. State*, 44 S.W.3d 464 (Tenn. 2001), we recognized that attorney misconduct might also necessitate tolling the statute of limitations. The prisoner in *Williams v. State* had appointed counsel who appealed his case to the Court of Criminal Appeals. After the Court of Criminal Appeals upheld Mr. Williams's murder conviction and life sentence, Mr. Williams's counsel withdrew. However, Mr. Williams's counsel did not file a timely Tenn. Sup. Ct. R. 14 motion requesting permission from this Court to withdraw. Mr. Williams also alleged that his counsel did not tell him that he was withdrawing. In fact, Mr. Williams claimed that his counsel led him to believe that he was appealing his case to this Court. While Mr. Williams waited for his counsel to act, the deadlines for filing a Tenn. R. App. P. 11 appeal and for filing a petition for post-conviction relief both passed. *Williams v. State*, 44 S.W.3d at 470-71.

We held that if Mr. Williams "was, in fact, misled to believe that counsel was continuing the appeals process," this would require tolling the statute of limitations. Mr. Williams would have found himself trapped because a prisoner is forbidden from seeking post-conviction relief while his counsel pursues direct review under Tenn. R. App. P. 11. *Williams v. State*, 44 S.W.3d at 471 (citing *Gibson v. State*, 7 S.W.3d 47, 49 (Tenn. Crim.

App. 1998); *Laney v. State*, 826 S.W.2d 117, 118 (Tenn. 1992); *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976)). Like the "procedural trap" in *Burford v. State* and the petitioner's mental incompetence in *Seals v. State*, "an attorney's misrepresentation, either attributable to deception or other misconduct, would also be beyond a defendant's control." *Williams v. State*, 44 S.W.3d at 469. We found that "further development of the record" was needed and affirmed the Court of Criminal Appeals' decision to remand the case for an evidentiary hearing. *Williams v. State*, 44 S.W.3d at 467.[9]

In his dissent in *Williams v. State*, Justice Drowota, joined by Justice Holder, made three points. First, he observed that the Court's recognition of due process tolling "wholly disregard[ed]" the "clearly expressed legislative intent" that the statute of limitations be strictly construed. *Williams v. State*, 44 S.W.3d at 474, 476 (Drowota, J., dissenting). Second, he stated that there was no meaningful distinction between "mere attorney negligence" and "alleged [attorney] misconduct." *Williams v. State*, 44 S.W.3d at 476 (Drowota, J., dissenting) (alteration in original). Third, he observed that the conduct of Mr. Williams's trial attorney was "textbook negligence" and that the "effect of the majority opinion" would remain the same whether the attorney's alleged deficiency was "intentional, reckless, or negligent." *Williams v. State*, 44 S.W.3d at 477 (Drowota, J., dissenting). In response to these concerns, the majority included a footnote, stating:

> Contrary to the dissent's assertion, we are not holding that a petitioner may be excused from filing an untimely post-conviction petition as a result of counsel's negligence. Instead, the focus here is only upon trial and appellate counsel's alleged misrepresentation in failing to properly withdraw from representation and in failing to notify the petitioner that no application for permission to appeal would be filed in this Court.

*Williams v. State*, 44 S.W.3d at 468 n.7.[10]

---

[9]Following an evidentiary hearing, the post-conviction court found that Mr. Williams had not been misled by his trial counsel regarding the filing of the Court of Criminal Appeals' opinion and denied the petition for post-conviction relief. The Court of Criminal Appeals affirmed this decision. *Williams v. State*, No. E2004-01267-CCA-R3-PC, 2005 WL 2148626 (Tenn. Crim. App. Sept. 7, 2005), *perm. app. denied* (Tenn. Dec. 19, 2005).

[10]The prisoner in *Stokes v. State* faced a situation similar to that of Mr. Williams. However, the attorney who failed to withdraw or file an appeal in *Stokes v. State* was the prisoner's post-conviction counsel. Because "there is no right to effective assistance of counsel in post-conviction proceedings," this Court unanimously held that due process did not require tolling the statute of limitations.

(continued...)

-11-

We again invoked the distinction between attorney negligence and attorney misconduct in *Smith v. State*, 357 S.W.3d at 358. Mr. Smith petitioned for relief almost twelve years after his conviction became final and alleged that his attorney had failed to inform him of the availability of post-conviction relief. The same attorney was simultaneously representing Mr. Smith in another case that was still pending on direct appeal. *Smith v. State*, 357 S.W.3d at 355, 359.

In affirming the lower courts' conclusions that Mr. Smith was not entitled to due process tolling, we emphasized that Mr. Smith, unlike Mr. Williams, had not claimed "any willful misrepresentation on the part of his trial or appellate counsel" and that there was "no evidence . . . that [Mr. Smith] was misled regarding the time to file a post-conviction petition," especially when Mr. Smith had previously filed several post-conviction petitions in other unrelated cases. *Smith v. State*, 357 S.W.3d at 359.

Significantly, we stated in *Smith v. State* that "[i]n every case in which we have held the statute of limitations is tolled, the pervasive theme is that circumstances *beyond a petitioner's control* prevented the petitioner from filing a petition for post-conviction relief within the statute of limitations." *Smith v. State*, 357 S.W.3d at 358. Because Mr. Smith did not argue that he was unaware of the status of his case or that he was misled about the filing deadline, we could not find that he was denied a "reasonable opportunity" to have his claims heard. *Smith v. State*, 357 S.W.3d at 359 (quoting *Burford v. State*, 845 S.W.2d at 208).

On at least three occasions, the Court of Criminal Appeals has relied on *Williams v. State* to toll the statute of limitations for a post-conviction petitioner.[11] Mr. Whitehead relies heavily on these cases. On other occasions, however, the Court of Criminal Appeals has relied on *Williams v. State* to support its conclusion that a prisoner's failure to meet the post-conviction filing deadline did not warrant due process tolling.[12] We cite the opinions simply

---

[10](...continued)
*Stokes v. State*, 146 S.W.3d 56, 57, 60-61 (Tenn. 2004); *accord Pennsylvania v. Finley*, 481 U.S. at 554-55, 559; *House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995).

[11]*See Nunn v. State*, No. M2007-00974-CCA-R3-PC, 2008 WL 3843906, at *9-11 (Tenn. Crim. App. Aug. 18, 2008) (No Tenn. R. App. P. 11 application filed); *Alderson v. State*, No. M2010-00896-CCA-R3-PC, 2010 WL 4888137, at *3 (Tenn. Crim. App. Nov. 30, 2010) (No Tenn. R. App. P. 11 application filed); *Oliver v. State*, No. W2009-02113-CCA-R3-PC, 2011 WL 4432884, at *1-5 (Tenn. Crim. App. Sept. 23, 2011) (No Tenn. R. App. P. 11 application filed).

[12]*See, e.g.*, *Jacobs v. State*, No. M2009-02265-CCA-R3-PC, 2010 WL 3582493, at *3 (Tenn. Crim. App. Sept. 15, 2010), *perm. app. denied* (Tenn. Jan. 20, 2011) (declining to toll the statute of limitations for attorney abandonment because "a petitioner's personal ignorance of post-conviction procedures, 'even when
(continued...)

-12-

as examples. None present the same factual scenario as Mr. Whitehead's case (i.e., a prisoner being misled by his former attorney who also retained possession of the prisoner's case files through the duration of the limitations period). We have, however, found cases from other jurisdictions that have considered a prisoner's similar claims under the analogous doctrine of "equitable tolling."

## IV.

Tennessee's doctrine of due process tolling in the context of petitions for post-conviction relief is essentially the same as the doctrine of equitable tolling recognized in the federal courts and the courts of other states. Like due process tolling, "[e]quitable tolling is a remedy that must be used sparingly, that is, in extreme cases where failure to invoke the principles of equity would lead to unacceptably unjust outcomes." *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (internal citations omitted). Equitable tolling is likewise triggered when circumstances beyond a prisoner's control prevent the prisoner from filing his or her petition on time. *Compare Smith v. State*, 357 S.W.3d at 358, *with Holland v. Florida*, 560 U.S. ___, ___, 130 S. Ct. 2549, 2562 (2010). Under both doctrines, while attorney error generally does not warrant tolling post-conviction filing deadlines, some attorney errors are so severe that they obstruct a prisoner's diligent attempts to file on time. *See Holland v. Florida*, 130 S. Ct. at 2563-64; *Williams v. State*, 44 S.W.3d at 469.

While we have recognized the doctrine of due process tolling with regard to post-conviction petitions, we have consistently declined to recognize the doctrine of equitable tolling in civil proceedings. *See, e.g.*, *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). Even though post-conviction proceedings are deemed to be "civil" proceedings for some purposes,[13] they necessarily implicate the liberty interests of an incarcerated criminal defendant. As such, post-conviction proceedings, unlike other ordinary civil proceedings, warrant heightened due process protections. *State v. Nix*, 40 S.W.3d at 462-63 (noting the combination of civil and criminal procedural elements in tolling

---

[12](...continued)
alleged to stem from an attorney's negligent failure to render advice to the petitioner,'" does not toll the statute); *Williams v. State*, No. M2007-00386-CCA-R3-PC, 2008 WL 544636, at *2 (Tenn. Crim. App. Feb. 21, 2008), *perm. app. denied* (Tenn. June 23, 2008) (declining to toll the statute of limitations for reasons of attorney abandonment when the petitioner did not allege "that counsel ever misrepresented anything to him"); *Jarrett v. State*, No. W2006-02033-CCA-R3-PC, 2007 WL 2120182, at*2 (Tenn. Crim. App. July 24, 2007), *perm. app. denied* (Tenn. Oct. 22, 2007) (declining to toll the statute of limitations when a petitioner missed the post-conviction deadline due to attorney abandonment because the petitioner "has not alleged that his attorney misrepresented anything to him").

[13]*See Carter v. Bell*, 279 S.W.3d 560, 565 (Tenn. 2009).

the Post-Conviction Procedure Act's statute of limitations); *cf. Watkins v. State*, 903 S.W.2d 302, 305 (Tenn. 1995) (describing post-conviction proceedings as "a hybrid affair" combining elements of criminal law and civil procedure); *State v. Scales*, 767 S.W.2d 157, 157 (Tenn. 1989) (quoting with approval now-Chief Justice Wade's observation that "[l]abels of civil and criminal have little application when constitutional rights hang in the balance").

Although our doctrine of due process tolling derives from the state and federal constitutions rather than the common law, we are unable to discern any substantive difference between our application of due process tolling in the context of post-conviction petitions and the federal courts' application of the doctrine of equitable tolling for habeas corpus petitions under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Most other states' versions of equitable tolling in the context of petitions for post-conviction relief also appear to be identical in substance.[14] Accordingly, we will consider how other jurisdictions have dealt with post-conviction scenarios similar to Mr. Whitehead's.

The United States Supreme Court recently solidified the federal courts' doctrine of equitable tolling for untimely habeas corpus petitions in *Holland v. Florida*. Mr. Holland, a death row prisoner, filed a *pro se* federal habeas petition five weeks after the AEDPA's one-year deadline. He argued that the deadline should have been tolled because his court-appointed attorney failed to file a petition, despite Mr. Holland's repeated requests for him to do so. The attorney had also failed to inform Mr. Holland that the Florida Supreme Court had decided his case, despite Mr. Holland's requests for that information, and had even miscalculated the date upon which Mr. Holland's habeas petition would be due. *Holland v. Florida*, 130 S. Ct. at 2554-59, 2564.

The district court dismissed Mr. Holland's petition, and the United States Court of Appeals for the Eleventh Circuit affirmed. *Holland v. Florida*, 130 S. Ct. at 2559-60. The federal appeals panel reasoned that an attorney's merely negligent behavior can never constitute an "extraordinary circumstance," such that it would warrant equitable tolling. "[I]n our view," the court said, "no allegation of lawyer negligence or of failure to meet a lawyer's standard of care – in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part – can rise to the level of egregious attorney misconduct" that would trigger equitable tolling. *Holland v. Florida*, 539 F.3d 1334, 1339 (11th Cir. 2008) (per curiam), *rev'd*, 560 U.S. ___, ___, 130 S. Ct. 2549 (2010).

---

[14]In fact, two members of this Court have described due process tolling under the *Burford* line of cases as "equitable tolling." *Harris v. State*, 301 S.W.3d at 148-49, 153 (Koch, J., concurring in part).

The United States Supreme Court found the Eleventh Circuit's tolling standard "too rigid," and reversed. *Holland v. Florida*, 130 S. Ct. at 2563. The Court said it had "previously made clear" that a petitioner is entitled to equitable tolling upon a showing "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Court determined that, contrary to the intermediate appellate court's holding, "at least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Holland v. Florida*, 130 S. Ct. at 2563.

The Court cited examples from "several lower courts," which "specifically held that unprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be 'extraordinary.'" *Holland v. Florida*, 130 S. Ct. at 2563-64. One of these was *Calderon v. United States District Court*, 128 F.3d 1283, 1289 (9th Cir. 1997), *overruled on other grounds by Calderon v. United States District Court*, 163 F.3d 530, 540 (9th Cir. 1998) (en banc). In *Calderon v. United States District Court*, the petitioner's lead counsel "withdrew after accepting employment in another state," and the work product the attorney left behind was "not useable by replacement counsel – a turn of events over which [the petitioner] had no control." *Calderon v. United States Dist. Court*, 128 F.3d at 1289. A similar result was reached in *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), in which a petitioner's lawyer "effectively abandoned him" and in "multiple ways" prevented him from filing his petition on time. Among other shortcomings, Mr. Nara's attorney failed to inform him when the state supreme court denied his appeal, led Mr. Nara to believe that she was going to file a habeas petition on his behalf, and told him there were no time constraints in filing his petition. *Nara v. Frank*, 264 F.3d at 320.

A third example cited by the United States Supreme Court in *Holland v. Florida* was *Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003). By failing to file a petition despite being directed to do so, Mr. Baldayaque's attorney "violated a basic duty of an attorney to his client," namely the "duty of loyalty," which "encompasses an obligation to defer to the client's wishes on major litigation decisions." *Baldayaque v. United States*, 338 F.3d at 152 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 17 (2d Cir. 1986)). This omission, combined with the attorney's failure to contact Mr. Baldayaque or research his case, fell so far outside the range of behavior a client should reasonably expect from an attorney, it constituted an extraordinary circumstance. *Baldayaque v. United States*, 338 F.3d at 152-53.

The Court also cited *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003), which is particularly relevant to Mr. Whitehead's case. Along with poor communication and failure

to file a petition, the key misconduct attributed to Mr. Spitsyn's attorney was that "despite a request that he return Spitsyn's file, [the attorney] retained it for the duration of the limitations period and more than two months beyond. That conduct was so deficient as to distinguish it from . . . merely negligent performance." *Spitsyn v. Moore*, 345 F.3d at 801. Furthermore, the United States Court of Appeals for the Ninth Circuit noted:

> It has been argued that Spitsyn could have satisfied the deadline despite [the attorney's] misconduct by filing a petition pro se. But without the file, which [the attorney] still possessed, it seems unrealistic to expect Spitsyn to prepare and file a meaningful petition on his own within the limitations period. We have previously held that equitable tolling may be appropriate when a prisoner had been denied access to his legal files. *Lott v. Mueller,* 304 F.3d 918, 924 (9th Cir. 2002). That logic would apply to Spitsyn's situation as well.

*Spitsyn v. Moore*, 345 F.3d at 801.

In addition, the United States Supreme Court cited *United States v. Martin*, 408 F.3d 1089 (8th Cir. 2005), which contained facts similar to *Spitsyn v. Moore*. While "a majority of the circuits have held that basic attorney errors such as miscalculation of a filing deadline are generally insufficient to support equitable tolling," the Eighth Circuit had previously joined "other circuits" in holding that "serious attorney misconduct" or "misdeeds" could equitably toll the statute of limitations. *United States v. Martin*, 408 F.3d at 1093-94 (citing *Spitsyn v. Moore*, *Baldayaque v. United States*, *Nara v. Frank*, and other cases).

The attorney in *United States v. Martin* had actively lied to the client and otherwise avoided communication. The attorney told the client that "there was no deadline, and that those who told him otherwise were wrong." The court declined to fault Mr. Martin "for relying on his attorney" in that circumstance. The attorney also kept Mr. Martin's original documents and failed to return them, even when the client asked for them. *United States v. Martin*, 408 F.3d at 1094-95. Based on these facts, the United States Court of Appeals for the Eighth Circuit found that Mr. Martin's case was not one "where a petitioner has himself to blame for an untimely filing" or one "dealing with attorney negligence, simple error, or even abandonment." Because Mr. Martin's attorney "misrepresented the law, misrepresented the status of Martin's case, and retained possession of documents that were crucial to Martin's claim," the Eighth Circuit found that equitable tolling was appropriate. *United States v. Martin*, 408 F.3d at 1096.

Justice Alito filed a separate opinion in *Holland v. Florida* to express his understanding of the types of attorney misconduct that would qualify as "extraordinary circumstances." First, Justice Alito noted that "our prior cases make it abundantly clear that attorney negligence is not an extraordinary circumstance warranting equitable tolling." *Holland v. Florida*, 130 S. Ct. at 2566 (Alito, J., concurring). For example, an attorney's mistake in miscalculating the limitations period "is simply not sufficient to warrant equitable tolling, *particularly in the postconviction context where prisoners have no constitutional right to counsel*." *Holland v. Florida*, 130 S. Ct. at 2566 (Alito, J., concurring) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007)). Justice Alito explained that, under principles of agency law, "the mistakes of counsel are constructively attributable to the client, at least in the postconviction context." *Holland v. Florida*, 130 S. Ct. at 2566 (Alito, J., concurring).[15]

Second, Justice Alito said the same rationale applied to even "gross negligence," which is simply "ordinary negligence with a vituperative epithet added." *Holland v. Florida*, 130 S. Ct. at 2567 (Alito, J., concurring). He observed that the "highly artificial distinction between gross and ordinary negligence" was irrelevant because, as *Coleman v. Thompson* noted, "it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, *i.e.*, 'imputed to the state.'" *Holland v. Florida*, 130 S. Ct. at 2567 (Alito, J., concurring) (quoting *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)).

On the other hand, Justice Alito reasoned that "the AEDPA statute of limitations may be tolled if the missed deadline results from attorney misconduct that is not constructively attributable to the petitioner." *Holland v. Florida*, 130 S. Ct. at 2568 (Alito, J., concurring). "Common sense," he said, "dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." *Holland v. Florida*, 130 S. Ct. at 2568 (Alito, J., concurring); *cf. Baldayaque v. United States*, 338 F.3d at 154 (Jacobs, J., concurring) ("[W]hen an 'agent acts in a manner completely adverse to the principal's interest,' the 'principal is not charged with [the] agent's misdeeds.'" (quoting *National Union Fire Ins. Co. of Pittsburgh v. Bonnanzio*, 91 F.3d 296, 303 (2d Cir. 1996))).

The majority of the United States Supreme Court later adopted Justice Alito's reasoning in the procedural default case of *Maples v. Thomas*, 565 U.S. ___, ___, 132 S. Ct. 912, 922-24 (2012). The Court found that Justice Alito's concurring opinion "homed in on

---

[15]As one court explained, "[e]ven if a prisoner diligently checks an attorney's references and disciplinary records, he still cannot prevent the attorney from bungling his case. Nonetheless, we hold the prisoner responsible for his attorney's bungling." *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003).

the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client." Mr. Holland alleged that he had been abandoned, "evidenced by counsel's near-total failure to communicate" with Mr. Holland or to respond to his repeated inquiries and requests. These allegations, if true, "would suffice to establish extraordinary circumstances beyond his control." *Maples v. Thomas*, 132 S. Ct. at 923 (internal citations omitted). The Court agreed with Justice Alito that

> under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him. We therefore inquire whether Maples has shown that his attorneys of record abandoned him, thereby supplying the "extraordinary circumstances beyond his control" necessary to lift the state procedural bar to his federal petition.

*Maples v. Thomas*, 132 S. Ct. at 924 (internal citations omitted).

The United States Supreme Court's persuasive analysis of equitable tolling in light of agency law prompts us to clarify one of our previous distinctions. In *Smith v. State*, we observed:

> In *Williams,* 44 S.W.3d at 468, we held that *misrepresentation* concerning the status of the direct appeal could constitute ineffective assistance of counsel. Short of active misrepresentation, however, we have never held that trial or appellate counsel's inadvertent or negligent failure to inform his or her client of the right to file a post-conviction petition constitutes ineffective assistance of counsel.

*Smith v. State*, 357 S.W.3d at 358. While this is a correct statement of the law, the distinction we drew between attorney negligence and attorney misrepresentation in footnote seven of *Williams v. State* has become the focal point of cases such as this one. However, this focus on the attorney's mental state is somewhat misplaced. To the prisoner who is prevented from filing a petition for post-conviction relief on time, it makes no difference whether the attorney's misbehavior was negligent, grossly negligent, or intentional. *See Williams v. State*, 44 S.W.3d at 476-77 (Drowota, J., dissenting); *Holland v. Florida*, 130 S. Ct. at 2567-68 (Alito, J., concurring). Due process principles of fundamental fairness more properly focus our attention on whether the *result* of that negligent, reckless, or intentional attorney

misbehavior amounted to an extraordinary circumstance beyond the petitioner's control that thwarted timely filing.

Rather than perpetuate an artificial and unhelpful distinction between attorney negligence and attorney misrepresentation, we conclude that the better course is to adopt the rule of *Holland* and *Maples* for determining when due process necessitates tolling the Post-Conviction Procedure Act's one-year statute of limitations. While the elements of the *Holland* rule have been present in this state's due process tolling jurisprudence for some time,[16] our courts have tended to focus on whether particular cases fit one of the three ad hoc due process exceptions we have identified in the past, i.e., later-arising claims, petitioner mental incompetence, and attorney misrepresentation significantly more egregious than negligence.

Henceforth, when a post-conviction petitioner argues that due process requires tolling the Post-Conviction Procedure Act's statute of limitations based on the conduct of his or her lawyer, the two-prong inquiry of *Holland* and *Maples* should guide the analysis. A petitioner is entitled to due process tolling upon a showing (1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing. *Holland v. Florida*, 130 S. Ct. at 2562. Specifically, the second prong is met when the prisoner's attorney of record abandons the prisoner or acts in a way directly adverse to the prisoner's interests, such as by actively lying or otherwise misleading the prisoner to believe things about his or her case that are not true. *See Maples v. Thomas*, 132 S. Ct. at 923; *Holland v. Florida*, 130 S. Ct. at 2564-65; *Dillon v. Conway*, 642 F.3d 358, 363-64 (2d Cir. 2011); *Downs v. McNeil*, 520 F.3d at 1320-21 (discussing these two "well-recognized exceptions" to the "your lawyer, your fault" rule).

In terms of diligence, courts have recognized that due diligence "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts. . . . Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system." *Downs v. McNeil*, 520 F.3d at 1323 (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)).

---

[16]*See, e.g.*, *Smith v. State*, 357 S.W.3d at 358 ("In every case in which we have held the statute of limitations is tolled, the pervasive theme is that circumstances *beyond a petitioner's control* prevented the petitioner from filing a petition for post-conviction relief within the statute of limitations."); *Williams v. State*, 44 S.W.3d at 469 (describing mental incompetence and attorney misrepresentation as circumstances "beyond a defendant's control" that "essentially preclude[]" a defendant from pursuing his legal remedies independently).

We do not expect this slight adjustment in our jurisprudence to open the floodgates of due process tolling. Other jurisdictions have recognized the *Holland* equitable tolling exception for years, yet its invocation remains rare. As one court explains, "any resort to [equitable tolling] must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The Alabama Supreme Court has also noted that "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Ex parte Ward*, 46 So. 3d 888, 897 (Ala. 2007) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). This is especially true in Tennessee, where our General Assembly has expressed its clear intention that the post-conviction filing deadline be construed as strictly as possible. *See also Sanchez v. State*, 816 N.W.2d 550, 561 n.10 (Minn. 2012) (collecting cases from states that recognize equitable tolling in post-conviction actions and concluding that "[w]e have not found any state that applies a test less stringent than the federal *Holland* test in the context of postconviction relief").

## V.

Based on the egregious combination of facts of this case, we conclude that Mr. Whitehead was pursuing his rights diligently and that the conduct of his appellate attorney amounted to abandonment that prevented him from filing his post-conviction petition before the deadline. Therefore, the statute of limitations should be tolled, and Mr. Whitehead should be permitted to proceed on the petition he filed in March 2008.

We find first that Mr. Whitehead was pursuing his rights diligently. Nothing in the record indicates that Mr. Whitehead was aware that the United States Supreme Court had denied his petition for certiorari until he received the misleading letter from his appellate lawyer in August 2007 – approximately five months after the fact. This letter also belatedly alerted Mr. Whitehead to the possibility of post-conviction relief. As soon as he received the letter, the record shows that Mr. Whitehead began researching the law and asking his appellate lawyer to send him his case files. Although his files were slow in coming, Mr. Whitehead apparently began working as soon as he received them, and ultimately produced a 32-page petition within the time frame indicated in his appellate lawyer's letter. These facts satisfy the first prong of the *Holland* test.

Mr. Whitehead also faced an extraordinary combination of circumstances that prevented him from filing his post-conviction petition on time – circumstances that were tantamount to attorney abandonment. We emphasize that the sockdolager in this case is the combination of Mr. Whitehead's appellate lawyer's failures, including the misleading deadline and the retention of Mr. Whitehead's files. None of the failures, standing alone,

would be sufficient. Specifically, Mr. Whitehead's appellate lawyer failed to timely inform Mr. Whitehead that the United States Supreme Court had denied his petition for certiorari. Coupled with this omission was the lawyer's failure to timely notify Mr. Whitehead that their attorney-client relationship had ended. Mr. Whitehead was not informed of either of these facts for five months – costing him valuable time he could have applied to his post-conviction petition. When the lawyer finally got around to informing Mr. Whitehead that his petition for certiorari had been denied, the effectiveness of the communication was undermined by the presence of the erroneous filing deadline. Furthermore, the lawyer ignored Mr. Whitehead's first request to return his files, and responded sluggishly to his second request. We find these failures – failures that worked against the client's interest – to be equivalent to the types of attorney abandonment described in the majority and concurring opinions in *United States v. Holland* and in *Maples v. Thomas.*

The record indicates that Mr. Whitehead did not already possess the files he needed and that the files held by his appellate lawyer contained critical information for his post conviction petition. In his final letter to his former lawyer, Mr. Whitehead asked for his files so he could "perfect [his] Petition for Post-Conviction Relief." Mr. Whitehead testified at his post-conviction hearing that he "could not possibly do any type work" on his post-conviction case because he "didn't have any files to . . . reference." Mr. Whitehead also testified that he had been communicating with the Innocence Project, who had asked him to forward a copy of his file – something Mr. Whitehead could not do because he did not possess the relevant files.

Other courts have found equitable tolling appropriate when a lawyer's compound errors included retaining a client's files. In *Puckett v. State*, 2000-DR-01077-SCT, 834 So. 2d 676 (Miss. 2002), the Mississippi Supreme Court found that, "[d]ue to circumstances completely beyond his control," a capital prisoner was "unable to timely file an application for leave to seek post-conviction relief" within the one-year deadline set by state law. For a time, Mr. Puckett had been represented by an attorney, who took Mr. Puckett's "important files and documents" to his offices in Oklahoma. When new counsel was appointed, Mr. Puckett's previous attorney ignored the new counsel's requests to send the files. Relying, in part, on our decision in *Williams v. State*, the Mississippi Supreme Court found that, by failing to return Mr. Puckett's files, Mr. Puckett's former attorney "affirmatively frustrated his efforts" to pursue post-conviction relief. The court therefore granted Mr. Puckett an additional 180 days to file his application. *Puckett v. State*, 2000-DR-01077-SCT (¶¶ 15-17), 834 So. 2d at 680-81.

In *Lott v. Mueller*, 304 F.3d 918 (9th Cir. 2002), the petitioner "was denied access to the legal files related to his federal habeas petition for eighty-two days" while he was transferred to another prison. When Mr. Lott regained access to his documents, he had only

-21-

six days before the filing deadline. The court found that "[s]uch a fleeting period could have made a timely filing by a pro se prisoner literally impossible." *Lott v. Mueller*, 304 F.3d at 922-23. Mr. Lott's case was remanded to determine whether "the confluence of numerous factors beyond the prisoner's control" warranted equitable tolling. *Lott v. Mueller*, 304 F.3d at 924-25.

In *Spitsyn v. Moore*, the United States Court of Appeals for the Ninth Circuit found that an attorney's misconduct was "sufficiently egregious to justify equitable tolling" when, "despite a request that he return [the petitioner's] file, [the attorney] retained it for the duration of the limitations period and more than two months beyond." Without the file, the court found it "unrealistic to expect [the petitioner] to prepare and file a meaningful petition on his own within the limitations period." *Spitsyn v. Moore*, 345 F.3d at 801.

In *United States v. Martin*, the United States Court of Appeals for the Eighth Circuit found equitable tolling warranted when the attorney "misrepresented the law, misrepresented the status of [his client's] case, and retained possession of documents that were crucial to [the petitioner's] claim." *United States v. Martin*, 408 F.3d at 1096. The attorney "failed to return any of [the petitioner's] paperwork to him despite repeated requests and then demands." *United States v. Martin*, 408 F.3d at 1095.

Federal courts in New York observe the following rule: "Equitable tolling is warranted when some event effectively prohibits the petitioner from pursuing habeas, such as the misplacement of files, or being denied access to materials necessary to file a habeas petition." *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 331 (W.D.N.Y. 2005); *Raynor v. Dufrain*, 28 F. Supp. 2d 896, 900 (S.D.N.Y. 1998).

The same principles apply to due process tolling under Tennessee's Post-Conviction Procedure Act. The lawyer's unreasonable delay in sending Mr. Whitehead his files, exacerbated by the lawyer's erroneous deadline and the delay in notifying Mr. Whitehead that his direct appeals were exhausted and that the attorney-client relationship had ended, constitute an "objective factor," an impediment that "cannot be fairly attributed" to Mr. Whitehead. *Coleman v. Thompson*, 501 U.S. at 753; *cf. Maples v. Thomas*, 132 S. Ct. at 923 ("Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." (quoting *Holland v. Florida*, 130 S. Ct. at 2568 (Alito, J., concurring))); *see also Spitsyn v. Moore*, 345 F.3d at 801 (noting that retaining a client's legal files "for the duration of the limitations period" goes beyond "merely negligent performance," and that it would be "unrealistic" to expect a petitioner to file a petition within the deadline without his legal files); *United States v. Martin*, 408 F.3d at 1095-96 (tolling the deadline when an attorney

"misrepresented" the law and retained possession of the prisoner's files, despite "repeated requests" to return them).

As we recently noted, "[i]n every case in which we have held the statute of limitations is tolled, the pervasive theme is that circumstances *beyond a petitioner's control* prevented the petitioner from filing a petition for post-conviction relief within the statute of limitations." *Smith v. State*, 357 S.W.3d at 358. This observation holds true today.

## VI.

Because Mr. Whitehead pursued his post-conviction rights diligently but was thwarted from filing a timely petition due to extraordinary circumstances beyond his control, the principles of due process and fundamental fairness require that the statute of limitations under Tenn. Code Ann. § 40-30-102 be tolled. The decision of the Court of Criminal Appeals is reversed, and the case is remanded to the trial court to proceed with Mr. Whitehead's petition for post-conviction relief filed in March 2008. The costs of this appeal are taxed to the State of Tennessee.

_____
WILLIAM C. KOCH, JR., JUSTICE