IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 3, 2018

**JOHN ARMSTRONG v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 13-01034     Carolyn Wade Blackett, Judge**

_____

**No. W2017-01825-CCA-R3-PC**
_____

The Petitioner, John Armstrong, appeals from the Shelby County Criminal Court's dismissal of his petition for post-conviction relief. The Petitioner contends (1) that the post-conviction court erred in dismissing his petition for being untimely filed; and (2) that his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of his trial counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER., JJ., joined.

Vicki M. Carriker, Memphis, Tennessee, for the appellant, John Armstrong.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Renee Byrd and Sarah Michelle Poe, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On December 19, 2013, the Petitioner pled guilty to attempted first degree murder and possession of a firearm during the commission of a dangerous felony. See Tenn. Code Ann. §§ 39-12-101, -13-202, -17-1324. As part of the plea agreement, the State recommended that the Petitioner be sentenced to fifteen years at thirty percent service for the attempted first degree murder conviction and three years at one hundred percent

service for the unlawful possession of a firearm conviction. The sentences were to be served consecutively, for a total effective sentence of eighteen years.

As a factual basis for the Petitioner's guilty pleas, the State provided that on October 26, 2012, the Petitioner "was in a verbal argument with his wife." The Petitioner's wife "got in her vehicle" and started to drive away. The Petitioner "retrieved a gun and fired a shot" at his wife's vehicle. "The shot went through the trunk of her vehicle [and] into the driver's seat, [striking] her in the upper back." The Petitioner's wife was "left paralyzed from this incident."

At the outset of the guilty plea submission hearing, the prosecutor listed the sentences, listed the applicable service percentages, and stated that the sentences were to be served consecutively. The trial court reviewed with the Petitioner the plea agreement and the rights he would be waiving by pleading guilty. The Petitioner stated that he understood this and that he was voluntarily pleading guilty. When the trial court asked the Petitioner if he had any questions, the Petitioner asked the trial court to further explain the payment plan for his court costs and fines. At the conclusion of the trial court's plea colloquy, the prosecutor stated that trial counsel had "been unbelievably diligent in negotiating this case with the State" and had "worked very, very hard" on the case.

The trial court then allowed trial counsel to briefly question the Petitioner. The Petitioner stated that trial counsel had provided him with the State's discovery materials and had reviewed those materials with him. The Petitioner also stated that trial counsel had visited him "on several occasions," had "filed several motions on [his] behalf," and answered "any questions" the Petitioner had. Finally, the Petitioner stated that trial counsel had done "everything that [he had] asked [her] to do on this case." After this exchange, the trial court accepted the Petitioner's guilty pleas and the State's sentencing recommendation.

On November 4, 2015, the Petitioner filed a pro se motion to correct an illegal sentence pursuant to Tennessee Rule of Criminal Procedure 36.1. State v. John Armstrong, No. W2016-00082-CCA-R3-CD, 2016 WL 5210869, at *1 (Tenn. Crim. App. Sept. 20, 2016). The trial court summarily dismissed the motion for failure to state a cognizable claim for Rule 36.1 relief and this court affirmed the dismissal on direct appeal. Id.

On October 24, 2016, the Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed to represent the Petitioner in this matter and an amended petition was filed on April 27, 2017. The petitions alleged that the Petitioner's guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of his trial counsel. The State subsequently filed a response to the petitions asserting that the

original pro se petition was untimely filed. The Petitioner filed a reply to the State's response arguing that the post-conviction court should toll the statute of limitations because his claims were "later arising" and because he was not mentally competent to file the petition within the statute of limitations due to "a learning disability."

The post-conviction court held an evidentiary hearing on this matter at which the Petitioner testified that he had trouble reading and was placed in "resource" classes in elementary school. The Petitioner explained that he could "read something and [he] [could not] tell you what [he] read" and that he understood "stuff better" when it was explained to him orally. The Petitioner testified that he did not finish high school and that he started the "Job Corp" program but did not complete it either. The Petitioner admitted that, prior to his arrest, he had a job cutting hair, that he was able to move out of his mother's house, and that he was able to pay his bills. The Petitioner testified that he started cutting hair when he was in sixth grade.

The Petitioner claimed that trial counsel never asked him about his mental health, that she never explained the elements of the charged offense to him, that she never talked to him about possible defenses or trial strategies, that she never reviewed the State's discovery materials with him, and that she hired a private investigator but that the investigator did not do anything. According to the Petitioner, trial counsel told him that he faced a maximum possible sentence of thirty-seven years if he was convicted at trial. The Petitioner recalled that the State's original offer was for a total effective sentence of twenty-one years. The Petitioner claimed that trial counsel told him that getting the State's offer reduced by three years was the "best she could do."

The Petitioner claimed that trial counsel told him that his fifteen-year sentence for the attempted first degree murder conviction "was [going to] eat up the [three]" for his unlawful possession of a firearm conviction. The Petitioner further claimed that he thought he would only have to serve four years and five months before he would be released. The Petitioner asserted that he would not have accepted the plea agreement if he had known his total effective sentence was eighteen years rather than fifteen. The Petitioner claimed that the victim had pulled a gun on him, that they had fought over the gun, and that the bullet had "ricocheted from the ground after [they] fought over the gun," hit the trunk of the vehicle, and then hit the victim in the back.

The Petitioner testified that he was "nervous and afraid" at the guilty plea submission hearing. The Petitioner further testified that he did not understand the guilty plea submission hearing and that he did not know what the word "consecutive" meant at the time of the guilty plea submission hearing. However, the Petitioner admitted that he heard the prosecutor review his sentences at the start of the guilty plea submission hearing. The Petitioner also recalled trial counsel's asking him questions at the end of the guilty plea submission hearing. The Petitioner testified that he answered trial counsel's

questions truthfully and that he did not lie when he told the trial court that his guilty pleas were voluntary. Trial counsel explained that at the time of the guilty plea submission hearing, he felt that trial counsel had done "everything she [was] supposed to" do.

The Petitioner explained that it was not until he was sent to prison and "the jailhouse lawyers told [him] otherwise" that he had an issue with trial counsel's performance. The Petitioner claimed that jail officials took all the paperwork for his case away from him after he entered his guilty pleas. The Petitioner testified that once he was in the penitentiary, other inmates informed him that he was "too long to be in the penitentiary" and that he needed to "work on [his] case."

The Petitioner testified that he paid another inmate to prepare his Rule 36.1 motion and that he filed the Rule 36.1 motion instead of a post-conviction petition because that was what the inmate told him to do. The Petitioner explained that he "didn't know [any]thing about [any] of [it]." After the motion was denied, the inmate filed the Petitioner's pro se appeal. The Petitioner testified that he was transferred to a different prison and another inmate informed him that the inmate who filed his Rule 36.1 motion "didn't do it right." That inmate prepared the instant pro se petition for post-conviction relief for the Petitioner. The Petitioner explained that he "didn't know what to do" and did not understand the documents his "jailhouse lawyers" had prepared for him.

The Petitioner's mother, Vairrelee Harrison, testified that the Petitioner suffered from epileptic seizures when he was an infant that were treated with phenobarbital until he "eventually [grew] out of it" around the time he was in first grade. Ms. Harrison testified that the Petitioner had "a learning thing" when he was a child. Ms. Harrison explained that when the Petitioner was around six years old, his doctors wanted to place him on disability because "he was having [] like a learning -- it was almost like dyslexia or something like that." Ms. Harrison further explained that, growing up, the Petitioner had trouble reading and would "act out" and "get upset" if he could not read a word. According to Ms. Harrison, the Petitioner did not "understand some things sometimes." Ms. Harrison continued, stating that the Petitioner understood "what he want[ed] to understand."

Ms. Harrison testified that the Petitioner was in "resource" classes until he was in junior high school. Ms. Harrison also testified that the Petitioner underwent a psychological evaluation when he was twelve years old. The evaluation report stated that the Petitioner had an IQ of eighty-six, which the report stated was "low average." Ms. Harrison testified that the Petitioner did not graduate from high school and did not complete the "Job Corp" program. However, Ms. Harrison admitted that the Petitioner did not finish high school because he was skipping classes and not doing his work. Ms. Harrison also admitted that the Petitioner was able to get a job, live on his own, and pay

-4-

his bills. Additionally, Ms. Harrison "tried to start [the Petitioner] out with a bank account, but that wasn't too successful."

Trial counsel testified that she was retained by Ms. Harrison to represent the Petitioner. Trial counsel testified that she met with the Petitioner several times, that she reviewed the discovery materials provided by the State with the Petitioner, that she discussed possible defenses with the Petitioner, and that she discussed the positives and negatives of pleading guilty with the Petitioner. Trial counsel recalled that she was able to get the State to lower its offer from six years for the firearm charge to three years, but she was unable to get the State to go any lower despite approaching the prosecutor's supervisor to try to get a better offer. Trial counsel testified that she explained to the Petitioner that it was his decision whether to plead guilty. Trial counsel further testified that she "thoroughly" reviewed the plea agreement documents with the Petitioner and explained his sentences to him.

Trial counsel testified that there was nothing that "raised any red flags" regarding the Petitioner's competency. Trial counsel explained that the Petitioner never appeared to have any mental health issues or to not understand her. Trial counsel thought that the Petitioner "was able to explain himself well." Trial counsel testified that she did not attempt to get the Petitioner's medical records or talk to his family about his mental health because she had no reason to think that "there was some type of competency issue."

On August 31, 2017, the post-conviction court entered a written order dismissing the petitions for being untimely filed. The post-conviction court concluded that the Petitioner had failed to establish "that he was unable to manage his personal affairs or understand his legal rights and liabilities"; therefore, "he was legally competent" and tolling of the statute of limitations was not warranted. Having concluded that the petitions were time-barred, the post-conviction court did not address the Petitioner's claim that his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of his trial counsel. This appeal followed.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in dismissing his petitions for being untimely filed. The Petitioner argues that "he was unable to understand or know how to accurately proceed with his [p]etition" due to "a learning disability." The Petitioner further argues that his claims are "later arising" because he "was unaware that he needed to file a petition for post-conviction" relief. The Petitioner also contends that his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of his trial counsel. The State responds that the post-conviction court did not err in dismissing the petitions for being untimely filed.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A petition for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final . . . ." Tenn. Code Ann. § 40-30-102(a). Here, it was undisputed that the one-year statute of limitations expired before the original pro se petition was filed.

"[T]he right to file a petition for post-conviction relief . . . shall be extinguished upon the expiration of the limitations period." Tenn. Code Ann. § 40-30-102(a). "If it plainly appears from the face of the petition, any annexed exhibits or the prior proceedings in the case that the petition was not filed . . . within the time set forth in the statute of limitations, . . . the judge shall enter an order dismissing the petition." Tenn. Code Ann. § 40-30-106(b). The Post-Conviction Procedure Act is explicit that the one-year statute of limitations "shall not be tolled for any reasons, including any tolling or saving provision otherwise available at law or equity." Tenn. Code Ann. § 40-30-102(a).

The Post-Conviction Procedure Act provides for only three narrow factual circumstances in which the statute of limitations may be tolled, none of which the Petitioner alleges apply to his case. See Tenn. Code Ann. § 40-30-102(b). In addition to the statutory circumstances, our supreme court has held that due process principles may require tolling the statute of limitations. See Whitehead v. State, 402 S.W.3d 615, 622-23 (Tenn. 2013). To date, our supreme court "has identified three circumstances in which due process requires tolling the post-conviction statute of limitations": (1) when the claim for relief arises after the statute of limitations has expired; (2) when the petitioner's mental incompetence prevents him from complying with the statute of limitations; and (3) when the petitioner's attorney has committed misconduct. Id. at 623-24.

Regarding the Petitioner's argument that his mental incompetence prevented him from complying with the statute of limitations, the standard of competency is whether the petitioner possessed the capacity to appreciate his position and "make a rational choice with respect to continuing or abandoning further litigation" or whether the petitioner was suffering from "a mental disease, disorder, or defect" that substantially affected his capacity. Reid ex rel. Martiniano v. State, 396 S.W.3d 478, 512-13 (Tenn. 2013) (quoting Tenn. Sup. Ct. R. 28, § 11(B)(1)).[1] The post-conviction court should begin with a presumption that the petitioner is competent. Id. at 512.

---

[1] The prosecutors, post-conviction counsel, and the post-conviction court all asserted at the evidentiary hearing that the standard of mental incompetence with respect to the post-conviction statute of limitations was that announced in State v. Nix, 40 S.W.3d 459, 463 (Tenn. 2001). However, our supreme court expressly abandoned that standard in Reid, 396 S.W.3d at 511-13.

The petitioner "must make a prima facie showing that [he] is incompetent by submitting 'affidavits, depositions, medical reports, or other credible evidence that contain specific factual allegations showing the petitioner's incompetence.'" Reid, 396 S.W.3d at 512 (quoting Holton v. State, 201 S.W.3d 626, 632 (Tenn. 2006)). "Unsupported, conclusory, or general allegations of mental illness will not be sufficient to require tolling and prevent summary dismissal." State v. Nix, 40 S.W.3d 459, 464 (Tenn. 2001), overruled on other grounds, Reid, 396 S.W.3d at 512; see Tenn. Code Ann. § 40-30-106(b), (f).

Here, the Petitioner failed to rebut the presumption that he was competent. Ms. Harrison testified that the Petitioner suffered from epileptic seizures as a child and "a learning thing." However, by the time the Petitioner was twelve, his IQ was classified as "low average." As an adult, the Petitioner was able to maintain a job, live on his own, and pay his bills. Trial counsel testified that there was nothing that "raised any red flags" regarding the Petitioner's competency and that the Petitioner "was able to explain himself well." More importantly, the Petitioner filed a pro se Rule 36.1 motion to correct an illegal sentence in the time between his guilty pleas and the filing of his post-conviction petition. This demonstrated that he had the capacity to "make a rational choice with respect to continuing or abandoning further litigation." Reid, 396 S.W.3d at 512-13.

With respect to the Petitioner's argument that his claims are "later arising" because he "was unaware that he needed to file a petition for post-conviction" relief, this court has repeatedly held that a petitioner's ignorance of post-conviction procedures and "mere lack of knowledge that a claim exits" will not toll the statute of limitations. Joshua Jacobs v. State, No. M2009-02265-CCA-R3-PC, 2010 WL 3582493, at *3 (Tenn. Crim. App. Sept. 15, 2010). Accordingly, we conclude that the post-conviction court did not err in dismissing the petitions for being untimely filed. Because the Petitioner's post-conviction claims are barred by the statute of limitations, we will not address the merits of the petitions.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-7-