IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 24, 2018

**STEPHEN D. LESTER, SR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 301929   Don W. Poole, Judge**

_____

**No. E2017-01437-CCA-R3-PC**

_____

The Petitioner, Stephen D. Lester, Sr., appeals the post-conviction court's dismissal of his petition for post-conviction relief as untimely.  On appeal, he argues that due process requires tolling of the statute of limitations because his untimely filing was due to misrepresentations by trial counsel.  After review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Steven G. Moore, Chattanooga, Tennessee, for the appellant, Stephen D. Lester, Sr.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Neal Pinkston, District Attorney General; and Andrew Coyle, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On February 25, 2008, the Petitioner pled guilty to two counts of aggravated robbery and one count of attempted aggravated robbery in exchange for an effective sentence of eight years in the Department of Correction.

At the guilty plea hearing, the State summarized its proof and the factual basis for the pleas as follows:

[O]n or around December 24th of 2005, an unknown black male suspect entered the Cingular Wireless store on Highway 58. . . . The suspect then pulled [out] a silver pocket knife and told the cashier, a one Ms. [Janet] Dickerson, that he wanted the money. He then took a blue bank bag that contained approximately $700 and told Ms. Dickerson to go to the back room, demanded cash from her purse, which was approximately $190, and her cell phone. He then forced Ms. Dickerson into the bathroom at the back of the store and exited the front door in an unknown direction.

There was an investigation, they took fingerprints, the suspect's description was given at the time and at that point they just had the description and they had no one [suspect] at that time.

. . . .

[O]n December 31st of 2005, a suspect entered into . . . American RV Sales on Highway 58 . . ., displayed a knife and demanded money from the business employee, a Mr. Henry Wooten. Mr. Wooten then, also, though, displayed a handgun towards the believed suspect and the [Petitioner] then cut the victim in the stomach with the knife. [The victim] was treated and released on the scene, so no serious bodily injuries in that manner, but there was an attempt to take money but nothing was actually successfully taken due to the scuffle between the suspect and the victim.

[T]he victim was shown a photo lineup wherein the [Petitioner] was . . . identified[] by the victim as the perpetrator in this attempted robbery.

[N]o one was apprehended after that incident . . . just the lineup was given.

. . . .

[O]n or around January 27th of 2006, there was a reported robbery that had occurred at the Extended Stay on Air Park Drive . . . . Upon coming to the scene, [the police] interviewed a Mr. Lawrence Graham, who is the victim in this case, and they also noticed that the suspect, or [Petitioner], had been apprehended by the victim.

At that time, it was determined that . . . the [Petitioner] approached the victim, the victim said hello, or something of that nature, the [Petitioner] . . . pointed a gun at [the victim] and demanded money and anything that he had, his ID, things of that nature. He gave the [Petitioner]

about $250 in cash. There was a struggle over the weapon and the victim was shot in the hand . . . and treated for injuries and released. . . . [H]e has had to have surgery for injuries to his hand.

. . . .

And then Mr. Graham held the [Petitioner], who then claimed to please let [him] go, because he was just 17, held him until police came then subsequently identified [the Petitioner] as the perpetrator of the two prior robbery, attempted robberies.

Although the Petitioner disagreed with some of the facts, he stipulated that the State had sufficient proof to convict him at trial. The Petitioner testified that he understood the terms of the plea agreement and had no questions because "it was explained very thoroughly to [him] by [his] lawyer." The Petitioner stated that no one forced or coerced him into pleading guilty and, when questioned about counsel's representation, the Petitioner replied that he was "very satisfied."

From the post-conviction court's order, we discern that the Petitioner was released from confinement sometime in 2012 but was arrested for felony murder in January 2013. He was released on bond in March 2014 and then his bond was revoked in February 2015. On February 11, 2015, the Petitioner was convicted of felony murder. The Petitioner was in federal custody from December 2015 to April 2016.

The Petitioner filed a petition for post-conviction relief on May 11, 2017. On May 25, 2017, the post-conviction court issued a preliminary order in which it concluded that the petition was untimely but granted the Petitioner a hearing to determine "whether the [P]etitioner was prevented by extraordinary circumstances from filing a timely post-conviction petition and whether the [P]etitioner diligently pursued his rights."

At the evidentiary hearing, the Petitioner stated that he was seventeen years old when he committed the underlying crimes and nineteen years old when he pled guilty in February 2008. He said that he was represented by counsel after his case was transferred to criminal court from juvenile court.

The Petitioner testified that counsel told him that by pleading guilty, he would be "waiving [his] rights to trial, direct appeal and collateral post-conviction." However, the Petitioner said that he did not understand what counsel meant. Although counsel never talked to him about continued representation after the plea, the Petitioner thought that counsel "would remain in contact" and "keep [him] informed on what's going on" because counsel had been paid by the Petitioner's mother. The Petitioner felt that

counsel misled him about his post-conviction rights, and he understood counsel's advice to mean that he could not file a post-conviction petition. The Petitioner testified that he learned about post-conviction proceedings in April 2016 while he was incarcerated for other offenses.

On cross-examination, the Petitioner acknowledged his signature on the plea petition. The Petitioner recalled that counsel read the plea petition aloud to him. He recognized counsel's handwritten notation of "no appeal" on the plea petition. The Petitioner said that counsel told him that by pleading guilty, he "would have no right to any type of appeal, post-conviction procedures." However, he admitted that counsel never used the term "post-conviction." He clarified that counsel told him that he "would have no direct appeal or collateral review on [his] case." The Petitioner acknowledged that he testified at the plea submission hearing that he was "very satisfied" with counsel's representation and had no complaints.

The Petitioner confirmed that he served his sentence and was released on November 13, 2012. He said that he never contacted counsel during his incarceration and was not aware of any member of his family communicating with counsel. He did not ask counsel to undertake any actions on his behalf and "didn't know [he] had any actions to take."

The Petitioner admitted that he was arrested for felony murder two months after his release. He acknowledged that he was in jail for more than a year before making bond and, during that time, did not reach out to counsel or any other attorney regarding a post-conviction action in his 2008 guilty plea case. He said that he was released on March 5, 2014, by making "a large bond." While out on bond, neither he nor a member of his family contacted counsel, and he and his attorney in the felony murder case were busy working on that case.

The Petitioner said that his bond was revoked in February 2015, and he was convicted of felony murder on December 11, 2015, and received a life sentence. He remained incarcerated in the Hamilton County Jail from December 2015 until April 2016 when he was moved to a correctional facility in Bradley County in connection with federal charges. He learned about post-conviction proceedings "a couple of months" after his arrival in Bradley County while he was studying the law in preparation for his other cases. He obtained a copy of a post-conviction petition, which he filled out, and filed it on May 11, 2017. He admitted that the petition was filed "a little less" than ten years after he pled guilty in the case at hand.

Counsel testified that he was retained by the Petitioner's mother, Inez Jackson, to represent the Petitioner at the trial level. The contract between them did not include an

agreement for counsel to represent the Petitioner in any appeal. Counsel recalled that Ms. Jackson contacted him approximately six months after the Petitioner entered his guilty pleas requesting a copy of the transcript from the juvenile court proceeding, which he provided to her along with "the entire paper file." Aside from that contact with Ms. Jackson, counsel had no other contact with anyone in the Petitioner's family except for a time he represented the Petitioner's sister in general sessions court. Counsel was never contacted by the Petitioner following the guilty plea submission.

Counsel testified that he went over the plea petition with the Petitioner line-by-line. He said that it is his general practice to place marks on a plea petition as he reviews it with a client and he did so with the Petitioner in this case. He also underlines information that he believes is important to stress to a client and to maintain "a contemporaneous record of the conversation" he has with the client about the plea petition. Counsel recalled that he specifically noted "no appeal" next to the following paragraph in the plea petition that discussed wavier of the right to appeal:

> I understand that, by pleading guilty, I waive the right to trial and, after the Court accepts my plea of guilty, the decision is final, there will be no further trial, and I cannot change my mind or reopen the case.

Counsel elaborated that he included the "no appeal" notation because he wanted to "have a contemporaneous record of the conversation dealing with that particular aspect of an appeal to the Court [of] Criminal Appeals."

Counsel testified that he did not discuss post-conviction matters with the Petitioner and it was not his practice to do so with a client unless specifically asked. Counsel added that he was never contacted by one of the Petitioner's other attorneys to discuss filing a post-conviction petition for the Petitioner. Counsel stated that the first time he heard the Petitioner say anything about "collateral review" was during the Petitioner's post-conviction testimony.

After considering the testimony and arguments of the parties concerning the tolling of the statute of limitations, the post-conviction court issued a written order on June 19, 2017, dismissing the petition as untimely.

## ANALYSIS

Under the Post-Conviction Procedure Act, a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date

on which the judgment became final, or consideration of the petition shall be barred." Tenn. Code Ann. § 40-30-102(a).

> The post-conviction statute contains a specific anti-tolling provision:
>
> > The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

Id.

Subsection (b) of the statute sets forth the three narrow exceptions under which an untimely petition may be considered, none of which is applicable in this case. However, in addition to the statutory exceptions, our supreme court "has identified three circumstances in which due process requires tolling the post-conviction statute of limitations": (1) when a claim for relief arises after the statute of limitations has expired; (2) when a petitioner is prevented by his or her mental incompetence from complying with the statute's deadline; and (3) when attorney misconduct necessitates the tolling of the statute. Whitehead v. State, 402 S.W.3d 615, 622-23 (Tenn. 2013).

When a petitioner argues that due process requires tolling the statute of limitations based on the conduct of his or her lawyer, he or she "is entitled to due process tolling upon a showing (1) that he or she has been pursuing his or her right diligently, and (2) that some extraordinary circumstances stood in his or her way and prevented timely filing." Id. at 631. "[P]ursuing his or her right diligently" does "not require a prisoner to undertake repeated exercises in futility or to exhaust every imagineable option, but rather to make reasonable efforts" to pursue the claim. Id. "Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system." Id. A petitioner can establish the second prong of this test "when the [petitioner]'s attorney of record abandons the [petitioner] or acts in a way directly adverse to the [petitioner]'s interests, such as by actively lying or otherwise misleading the [petitioner] to believe things about his or her case that are not true." Id. However, due process tolling "must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Id. at 631-32.

The Petitioner argues that due process requires tolling of the statute of limitations because misrepresentation by trial counsel about post-conviction relief was an extraordinary circumstance that prevented him from filing a timely post-conviction petition.

We initially note that the post-conviction court found that counsel did not abandon the Petitioner in such a way to warrant due process tolling of the statute of limitations and made a credibility determination in favor of counsel regarding any alleged misrepresentation about post-conviction relief:

> In the [P]etitioner's cases, there is no evidence of abandonment by counsel. Counsel represented the [P]etitioner through the entry of the pleas as contracted and provided the file to the [P]etitioner's mother when requested. Nothing remained for counsel to do in the matter.

> Nor does the Court find any misrepresentation by counsel. The Court accredits counsel's testimony that he did not discuss post-conviction relief with the [P]etitioner. The [P]etitioner concedes that counsel did not mention the term "post-conviction" but insists that counsel did describe the pleas as the end of the cases and foreclose[d] the possibility of both appeal and "collateral review." The Court gathers that counsel did not affirmatively misrepresent post-conviction relief as unavailable; he merely did not mention it at all.

Counsel testified that he went over the plea petition with the Petitioner line-by-line and specifically noted that the Petitioner was waiving his right to appeal by accepting the State's offer and pleading guilty. The Petitioner claims that counsel told him that he would also be waiving his right to "collateral review" or post-conviction relief, but counsel testified that he did not discuss post-conviction matters with the Petitioner and it was not his practice to do so with a client unless specifically asked. Counsel further testified that the first time he heard the Petitioner say anything about "collateral review" was during the Petitioner's post-conviction testimony. In addition, the colloquy from the guilty plea submission hearing indicates that the Petitioner was apprised that "[t]here will be no trial, there will be no appeal," which the Petitioner acknowledged understanding, and, during the colloquy, there was no mention of waiver of post-conviction or collateral review.

There is simply no proof that counsel misrepresented the law on post-conviction procedure, misrepresented the status of the Petitioner's case, abandoned the Petitioner, or acted in a way adverse to the Petitioner's interests. Furthermore, assuming arguendo that the Petitioner's unawareness of post-conviction procedure was in some way attributable

to counsel, such would not warrant due process tolling. "Short of active misrepresentation . . . [the supreme court has] never held that trial or appellate counsel's inadvertent or negligent failure to inform his or her client of the right to file a post-conviction petition constitutes ineffective assistance of counsel" sufficient to toll the statute of limitations in post-conviction proceedings. Smith v. State, 357 S.W.3d 322, 358 (Tenn. 2011); see also Williams v. State, 44 S.W.3d 464, 468 n.7 (Tenn. 2001).

Because the Petitioner failed to show that counsel's advice was an extraordinary circumstance that prevented him from filing a timely post-conviction petition, the post-conviction court properly dismissed the petition.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the dismissal of the Petitioner's petition for post-conviction relief as untimely.

_____
ALAN E. GLENN, JUDGE