IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 14, 2020 Session

## JAMES RODNEY SMITH v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Houston County**
**No. 2015-CR-86      Larry J. Wallace, Judge**

_____

**No. M2019-00820-CCA-R3-PC**

_____

The Petitioner, James Rodney Smith, appeals the Houston County Circuit Court's order summarily dismissing his petition for post-conviction relief as untimely. On appeal, the Petitioner argues that due process requires the tolling of the one-year limitations period. After reviewing the record, we conclude that while the petition was untimely, the Petitioner has alleged facts that would toll the limitations period. As such, we reverse the judgment of the post-conviction court and remand the case for an evidentiary hearing to determine whether the Petitioner is entitled a late-filed petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Samuel W. Clemons, Jr., Clarksville, Tennessee, for the appellant, James Rodney Smith.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; W. Ray Crouch, Jr., District Attorney General; and Talmage M. Woodall, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case has a complicated and unusual procedural history. The record reflects that the November 2015 session of the Houston County Grand Jury indicted the Petitioner on one count of arson, a Class C felony. See Tenn. Code Ann. § 39-14-301. After a jury trial, the Petitioner was convicted as charged. The initial judgment was entered on April 27, 2017, noting that the sentencing hearing was set for June 9, 2017. Thereafter, an amended judgment was entered on October 11, 2017, reflecting a four-year sentence on supervised probation and $15,000 restitution. The judgment was file-stamped November 28, 2017, and did not contain defense counsel's signature. Similarly, the certificate of

service was not filled out, and no evidence in the record indicates that the Petitioner or defense counsel received a copy of the filed judgment. No motion for a new trial or direct appeal was filed.

The documents in the record indicate that Assistant Public Defenders Matthew Mitchell and Jack Lockert represented the Petitioner at trial and sentencing. After the sentencing hearing on October 11, 2017, the Petitioner wished to retain private counsel. A receipt dated October 13, 2017, indicated that the Petitioner paid $2,500 to attorney Olin Baker for "Fees-Sentencing Hearing."[1]

In an October 15, 2017 email to Mr. Baker's assistant, Lorinda Halstead, the Petitioner clarified that he hired Mr. Baker for the motion for new trial hearing set for October 23, 2017,[2] that the sentencing hearing had already occurred on October 11, and that he wanted to make an appointment with Mr. Baker to discuss the upcoming hearing. On October 18, Ms. Halstead told the Petitioner that Mr. Baker could not meet with him before that Saturday. The Petitioner responded that he was concerned because the hearing was set for Monday and that there would be no time to "notify witnesses." In a separate email on the same day, the Petitioner asked Ms. Halstead if she knew whether Mr. Lockert had been notified of Mr. Baker's representing the Petitioner.

On October 19, 2017, Ms. Halstead sent the Petitioner an email, urging him to "[r]est assured that Olin has your back and a plan in place[.]" She also stated that she would "check to see if Jack Lockert [was] aware of Olin's representation." Ms. Halstead and the Petitioner exchanged emails regarding transcripts and the Petitioner's views on the merits of his motion. On October 21, Ms. Halstead conveyed that Mr. Baker had spoken to Mr. Lockert and informed Mr. Lockert that he would be representing the Petitioner on the motion for a new trial. Ms. Halstead noted that the Petitioner needed to come to court on Monday but that the hearing would most likely be continued.

It is the subject of some dispute whether Mr. Baker appeared in court on October 23, 2017. The court docket minutes from October 23 read, "Olin Baker to file a new motion." An October 27, 2017 court system note read, "Hearing Result for James Rodney Smith - Motion Hearing held 10/23/2017 9:00:00 AM - Case Rescheduled To Be Determined[.]"

As discussed below, Mr. Baker maintained that although he came to the clerk's

---

1 The Petitioner kept meticulous records of email communications with his attorneys, his probation officer, and the court clerk in this case. Several motions filed by the Petitioner and Mr. Baker provided additional facts as to what occurred.

2 The court docket notes confirmed that an October 23 motion for new trial hearing had been set at the October 11 sentencing hearing.

office, he did not appear in court and that an unknown third party represented to the court that he or she "got word" that Mr. Baker was the Petitioner's counsel; Mr. Baker asserted that the hearing recording supported his version of events. The Petitioner, meanwhile, averred that he was with Mr. Baker in the courtroom, that the Petitioner went to the restroom, and that when he returned, Mr. Baker stated that the case had been called in his absence.

Assistant Public Defender Timothy Richter, who represented the Petitioner briefly before the post-conviction petition was filed, stated that two attorneys, one of whom was Mr. Mitchell, were in court on October 23 and saw Mr. Baker aver in open court that he represented the Petitioner and would be filing a motion for a new trial. Mr. Richter noted that upon his examination of the hearing recording, he discovered that it contained a forty-five minute gap during which the Petitioner's case would have been called. Mr. Richter consequently could not prove that Mr. Baker was in court.

In any event, it is clear from the record that the Public Defender's Office did not seek permission to withdraw from the Petitioner's case after sentencing, and Mr. Baker did not file a notice of appearance. The Petitioner was made aware by Mr. Baker that once the judgment had been filed, they had thirty days in which to file the motion for a new trial.

The Petitioner followed up with Ms. Halstead on November 12, 2017, regarding whether the judgment had been filed. Ms. Halstead responded on November 22, 2017, that she spoke to the court clerk and that the judgment was not yet filed. She sent the Petitioner a fax from the court clerk reflecting the first judgment form without a sentence. On November 25, 2017, the Petitioner sent an email urging Ms. Halstead to have Mr. Baker contact the court and request that the judgment be filed. The Petitioner emphasized his concern that no motion for a new trial[3] could be filed until the judgment was filed. The Petitioner stated in a later motion that after several unsuccessful attempts to communicate with Mr. Baker thereafter, the Petitioner fired him via email on December 15, 2017, and received a full refund of his retainer.

The Petitioner, by his own account, spoke to an attorney in his family about his frustration with the delay in the judgment's filing. The attorney called the court clerk around December 20, 2017, and told the Petitioner that the judgment had not been filed.

On January 19, 2018, the Petitioner emailed deputy court clerk Michelle Avery to confirm that she told him "nothing ha[d] been filed to [the Petitioner's] case." Ms. Avery responded that she had received the Petitioner's email.

---

3 The Petitioner's emails and motions also mistakenly reference a motion for a judgment of acquittal. The court docket reflects that a motion for a judgment of acquittal was argued during the Petitioner's trial on April 27, 2017.

On February 8, 2018, the Petitioner met with his probation officer, who presented him with a copy of the judgment reflecting the November 28, 2017 filing date. The Petitioner memorialized their conversation in an email to the probation officer dated February 9, 2018, which he carbon-copied to Ms. Halstead and Mr. Baker. In the email, the Petitioner noted that he had called the court clerk every seven to fourteen days after firing Mr. Baker on December 15. He stated that the probation meeting was the first time he had seen the judgment in spite of his numerous calls to the clerk's office. The Petitioner stated that on his probation officer's advice, he had contacted Mr. Baker's office.

A February 8, 2018 email from Ms. Halstead advised the Petitioner to contact the Public Defender's Office as soon as possible in order for them to file a motion for a new trial. Mr. Baker apparently informed Ms. Halstead that the Petitioner had thirty days to file the motion "that starts running the date you actually receive the judgment sheet."

The Petitioner emailed his probation officer again on February 15, 2018, attaching email conversations with Mr. Lockert and Mr. Mitchell. The Petitioner stated that he went to the Public Defender's Office on February 12 to speak to Mr. Lockert, but that Mr. Lockert was sick with the flu. The Petitioner left a letter requesting that Mr. Lockert file a motion for a new trial on his behalf.[4]

On February 19, 2018, the Petitioner emailed Mr. Mitchell, repeating his request. On February 20, 2018, the Petitioner emailed both Mr. Mitchell and Mr. Lockert, noting that the judgment listed them as counsel when "Olin had already made his presence [sic] in court that he was [the Petitioner's] counsel" and that Mr. Baker was still the Petitioner's counsel at the time of the judgment's filing. Mr. Mitchell replied that his system showed that the Petitioner was represented by Mr. Baker and that the Petitioner needed to file a request to have the public defender reappointed. Upon request, Mr. Mitchell provided a screen shot of the Petitioner's electronic client file, which noted that the Petitioner had hired Mr. Baker.

Later that day, Mr. Lockert instructed the Petitioner to write a letter to the clerk's office requesting that the public defender be reappointed to his case. Mr. Lockert noted that "[i]t hurt Matt's feelings when you retained a private lawyer" but that they would "love" to take the case back. The Petitioner sent an email to Mr. Lockert assuring him that he would "do as [Mr. Lockert said,] by going to the clerk tomorrow to file the letter of request."

---

4 The Petitioner was also seeking a stay of restitution while the motion was pending; his extensive communications with his probation officer were an attempt to obtain permission not to make restitution payments until the confusion over the motion for a new trial was sorted out.

On February 21, 2018, the Petitioner filed a pro se motion to that effect. On February 23, 2018, the Petitioner emailed Mr. Lockert to notify him that the motion had been filed. The Petitioner asked who would let him know if the public defender was reappointed. On March 1, 2018, the Petitioner emailed Mr. Lockert and repeated his question. The Petitioner noted, "Due to the time sensitivity of the [two] motions that I need filed, I hope to hear from you soon."

On March 14, 2018, the Petitioner emailed Mr. Lockert that he had received notice a hearing to "determine [Mr. Lockert] as" the Petitioner's counsel had been set for April 23, 2018. The Petitioner asked for an appointment to discuss the hearing and information the judge might need.

On April 23, 2018, Judge Suzanne Lockert-Mash, who presided over the Petitioner's trial and the October 23, 2017 hearing, held a hearing on the Petitioner's motion to reappoint the public defender and to file a delayed motion for a new trial. At the hearing, Judge Lockert-Mash noted that Mr. Baker had not filed a motion to withdraw, that Mr. Baker had represented the Petitioner in open court and was counsel of record, and that because Mr. Baker never asked for permission to withdraw, the Petitioner could not be appointed new counsel. She further noted that the period for filing a motion for a new trial had passed. Judge Lockert-Mash reduced her findings to writing in an order dated May 1, 2018.

On June 4, 2018, Mr. Baker filed a motion to modify Judge Lockert-Mash's order, averring that although he came to the courthouse on October 23, 2017, he discovered at the clerk's office that the Petitioner's judgment form had not yet been filed. As a result, Mr. Baker stated that he left and never represented in open court that the Petitioner was his client. He said, instead, that the hearing recording reflected a third party's stating that he or she "got word" that Mr. Baker represented the Petitioner and would file a motion for a new trial.[5]

The Petitioner responded in an October 12, 2018 pro se motion that he and Mr. Baker were in court together on October 23; the Petitioner went to the restroom; and when the Petitioner returned, Mr. Baker told him the case had been called and continued because the judgment was not yet filed. The Petitioner noted that Mr. Baker told him that once the judgment was filed, they would have thirty days in which to file the motion for a new trial.

At a hearing on October 17, 2018, Mr. Baker stated to Judge Lockert-Mash that he never appeared on the Petitioner's behalf and that "[u]nbeknownst to [Mr. Baker], since [he] was put down as attorney of record, then the motion for new trial never got filed,

---

[5] Although Mr. Baker's motion listed an attached exhibit consisting of the hearing recording, the recording was not discussed at the hearing on the motion, and it is not included in the record on appeal.

because . . . [he] didn't know to do it[.]" Mr. Baker noted that he did not want the Petitioner to be prejudiced and asked the court "either to correct the judgment [and] . . . give [the Petitioner] leave to file the motion for new trial, or remove [Mr. Baker] as attorney of record and appoint [the Petitioner post-conviction relief] counsel." Mr. Baker further noted that he was "relieved before the final judgment was entered"[6] and that he thought the Petitioner was "entitled to appellate review[.]"

Judge Lockert-Mash found that Mr. Baker "never made an official appearance before the [c]ourt and that he [was] no longer attorney of this record then." The Petitioner asked Judge Lockert-Mash to "rule on Mr. Baker's motion to modify the order, to where [the Petitioner could] file for post-conviction relief . . . . And filing post-conviction relief [was] what [the Petitioner wanted] to do and [would] have done before Friday, about Friday of next week." Judge Lockert-Mash stated, "But what I'm going to do is I'm going to go ahead and appoint the public defender's office again. I want you all to go through this file as far as for a PCR." Mr. Richter was the assistant public defender present. Judge Lockert-Mash further stated to Mr. Richter that "if . . . you think it's a PCR, you come back to the [c]ourt and we will appoint someone else."[7]

On November 27, 2018, Mr. Richter filed a motion to withdraw from the case after concluding that if Mr. Baker was never counsel of record for the Petitioner, the Public Defender's Office would be named as a post-conviction respondent related to the failure to file a motion for a new trial; therefore, his office had a conflict of interest. Mr. Richter noted that although he suspected Mr. Baker had, in fact, represented to Judge Lockert-Mash that he was the Petitioner's counsel, he could not prove this.

At a hearing on December 10, 2018, Mr. Richter was granted permission to withdraw by Judge David Wolfe. Judge Wolfe instructed the Petitioner that he had thirty days to hire new counsel and noted that the Petitioner could not late-file a motion for a new trial "without filing a Post Conviction Relief [p]etition because this matter [was] already past the time to do that. So [he] need[ed] to hire a lawyer as soon as [he could.]" Mr. Richter noted on the record that "there [was] a one year deadline from the entry of that [j]udgment to file" for post-conviction relief. The record does not reflect that Judge Wolfe filed an order allowing Mr. Richter to withdraw.

---

[6] The record reflects that Mr. Baker was relieved on December 15, 2017; the judgment was filed on November 28, 2017.

[7] It appears that later in October, the Petitioner attempted to hire a private attorney named Michael Flanagan and paid him a $1,500 retainer; other than a letter from court clerk Donna Vincent confirming that Mr. Flanagan had not come to the courthouse to examine the Petitioner's file as of October 25, 2018, Mr. Flanagan is not otherwise mentioned in the record, and he did not file a notice of appearance.

-6-

Post-conviction counsel filed a notice of appearance on January 9, 2019. A post-conviction petition was filed on February 12, 2019, requesting due process tolling of the post-conviction statute of limitations and alleging ineffective assistance of counsel. On April 15, 2019, the post-conviction court summarily dismissed the petition, finding that no due process issues were raised. The Petitioner subsequently filed a timely notice of appeal.

ANALYSIS

Tennessee's Post-Conviction Procedure Act provides that a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-102(a). "As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a) and (c)).

There are few exceptions to this limitations period. The Post-Conviction Procedure Act provides that a petition may be filed beyond the expiration of the one-year limitations period if the otherwise untimely claim (1) is based on a constitutional right that did not exist at trial, (2) is based on new scientific evidence, or (3) seeks relief from a sentence that was enhanced because of a previous conviction that was later held to be invalid. Tenn. Code Ann. § 40-30-102(b)(1)-(3). None of these statutory exceptions apply in this case.

The statute of limitations in the present case began to run on December 28, 2017, one month after the judgment's file-stamp date of November 28, 2017. Because the Petitioner filed his petition for post-conviction relief on February 12, 2019, almost two months after the December 28, 2018 expiration of the limitations period, we conclude, as did the post-conviction court, that the petition was untimely.

However, the one-year limitations period for filing a post-conviction petition may be tolled based on due process concerns, which dictate that strict application of the statute of limitations may not deny a petitioner a reasonable opportunity to assert a claim in a meaningful time and manner when the failure to file in a timely manner is due to circumstances beyond a petitioner's control. State v. McKnight, 51 S.W.3d 559, 563 (Tenn. 2001); Williams v. State, 44 S.W.3d 464 (Tenn. 2001); Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995). For example, our supreme court has held that due process may require tolling the statute of limitations based upon the conduct of a petitioner's lawyer; specifically, in situations where an attorney has abandoned the petitioner or actively lied

or mislead the petitioner regarding his case.  Whitehead v. State, 402 S.W.3d 615, 631 (Tenn. 2013).  To succeed upon such a claim, a petitioner must show "(1) that he or she had been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing."  Id.

In this case, the Petitioner's argument that due process concerns necessitate the tolling of the statute of limitations is based upon abandonment after he had been misled by either Mr. Baker or the Public Defender's Office.  The State responds that although Mr. Richter cited an incorrect expiration date for the post-conviction statute of limitations, that date was before the actual expiration date and eighteen days remained in which the Petitioner could have timely filed a post-conviction petition.  However, the Petitioner waited until January 9, 2019 to retain a new attorney, and the State argues that the Petitioner is to blame for the untimely filing.  Therefore, the State avers that the Petitioner is not entitled to due process tolling of the limitations period.

Although attorney negligence, standing alone, is rarely sufficient to constitute the "extraordinary circumstances" contemplated by Whitehead, the facts alleged in the post-conviction petition present a unique situation in which the negligence of multiple attorneys and a misleading order from the post-conviction court combined to create obstacles that were, simply put, not within the Petitioner's control and not attributable to him.

The Petitioner, through fastidious recordkeeping, has presented evidence that he diligently pursued his right to obtain a delayed motion for a new trial after the court clerk misinformed Ms. Halstead and the Petitioner about the filing status of the judgment.  As of January 19, 2018, the pro se Petitioner was still being told that the judgment had not yet been filed.  As soon as the Petitioner discovered the error, he contacted both Mr. Baker and the public defender to obtain new representation.

In the meantime, the Petitioner filed his pro se motion requesting an extension of time in which to file the motion for a new trial.  However, because the Petitioner's former attorneys—Mr. Baker, Mr. Lockert, and Mr. Mitchell—did not follow the standard procedure of filing a notice of appearance and motion to withdraw, respectively, the court did not construe the pro se motion as a petition for post-conviction relief, as it could have. Instead, the court found that the Petitioner was still represented and not entitled to a delayed motion for a new trial.

The Petitioner, then, was in the untenable position of being a pro se litigant who was unable to file pro se motions because the court's records showed that he was currently represented.  It is unclear what occurred between the April 2018 hearing and June 2018, when Mr. Baker disputed the court's finding that he was ever counsel of record.  It seems

that Mr. Baker was at least partially motivated by a desire to help the Petitioner be allowed to file his post-conviction petition.

The Petitioner was, of course, aware that Mr. Baker was not representing him at this juncture. However, Mr. Baker was aware of the Petitioner's conundrum, and it is not clear whether Mr. Baker sought to have his motion disputing his status as counsel of record heard in a timely fashion or advised the Petitioner in any way about the post-conviction filing deadline. See Tenn. Sup. Ct. R. 8 § 1.16(d) ("A lawyer who is discharged by a client . . . shall, to the extent reasonably practicable, take steps to protect the client's interests."). We note that Mr. Baker was counsel of record from October 23, 2017, until October 17, 2018.

After the October 17, 2018 hearing in which Judge Lockert-Mash found that Mr. Baker never represented the Petitioner, the public defender was aware that the Petitioner was trying to file a post-conviction petition and that the public defender had never withdrawn from the case; nevertheless, Mr. Richter took no steps to assist the Petitioner in filing his petition, and nothing in the record indicated Mr. Richter advised the Petitioner to file one pro se. We note that the Petitioner had already been prevented from having his pro se motions heard in that same court. The Petitioner indicated during that hearing that he was ready and willing to proceed pro se with his petition; however, the court appointed Mr. Richter, presumably with the good intention of avoiding more confusion. Nevertheless, this again prevented the Petitioner from acting pro se.

Once he was appointed, Mr. Richter waited until November 27, 2018, one day before the one-year anniversary of the judgment's being filed, to file a motion to withdraw. Regardless of Mr. Richter's knowledge of a conflict of interest, he was not ethically prevented from filing an initial post-conviction petition to protect the Petitioner prior to or upon his withdrawal, considering the looming deadline for filing. See Tenn. Sup. Ct. R 8 § 1.16(d) ("A lawyer who . . . withdraws from representation of a client shall, to the extent reasonably practicable, take steps to protect the client's interests."). Nevertheless, Mr. Richter not only did nothing to protect the Petitioner's interests, but he also misinformed the Petitioner in open court about the deadline to file, stating that it was on November 28, 2018, "one year . . . from the entry of [the] [j]udgment."

The post-conviction court, in turn, did not correct Mr. Richter. The court urged the Petitioner to hire new counsel as soon as possible, but also instructed the Petitioner that he had thirty days within which to obtain that counsel. To the Petitioner, an unrepresented layperson, it appeared that, once again, a deadline had already passed in spite of his best efforts. According to Mr. Richter, his most recent source of information, the deadline was twelve days before the December 10 hearing. Compounding the issue, it was reasonable for the Petitioner to assume that if he followed the post-conviction court's instructions, he

would be permitted to late-file his post-conviction petition. Despite the State's assertion that the Petitioner is somehow at fault for waiting to retain counsel until January, the Petitioner followed the court's instructions. We note that scheduling a meeting with a new attorney during the holidays is often difficult for both prospective client and prospective counsel. In addition, it is not clear from the record whether the Petitioner had access to legal research materials; nonetheless, he received incorrect information from his attorneys at multiple junctures in this case, and we cannot fault him for relying upon their advice. The Petitioner has alleged extraordinary circumstances out of his control prevented him from complying with the limitations period.

In short, the Petitioner has alleged facts which, if taken as true, would entitle him to due process tolling. The post-conviction court should have granted an evidentiary hearing with the limited purpose of establishing whether the Petitioner could prove the due process grounds alleged.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is reversed and the case remanded for an evidentiary hearing, the scope of which is detailed in this opinion.

_____
D. KELLY THOMAS, JR., JUDGE