IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs July 19, 2022

**JENELLE LEIGH POTTER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Washington County**
**No. 45930     William B. Acree, Senior Judge**

_____

**No. E2021-01063-CCA-R3-PC**

_____

The Petitioner, Jenelle Leigh Potter, appeals the denial of her petition for post-conviction relief, wherein she challenged her convictions for two counts of first degree premeditated murder and one count of conspiracy to commit first degree murder.  She claims that trial counsel was ineffective due to trial counsel's failure to timely file a motion for new trial. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined.  JOHN EVERETT WILLIAMS, P.J., not participating.[1]

Grace E. Studer, Johnson City, Tennessee, for the appellant, Jenelle Leigh Potter.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Kenneth C. Baldwin, District Attorney General; and Dennis D. Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case involves the murders of Billy Clay Payne and Billie Jean Hayworth, whose bodies were found inside their Mountain City home on January 31, 2012. Thereafter, the Johnson County Grand Jury indicted the Petitioner and her parents, Marvin E. "Buddy" Potter, Jr., and Barbara Mae Potter, along with Jamie Curd for these crimes. The Petitioner and her mother were tried jointly in Washington County after the trial court granted a motion for change of venue.  An exhaustive summary of the facts presented at trial can be found in this court's direct appeal opinion.  *See State v. Jenelle Leigh Potter*,

---

[1] The Honorable John Everett Williams passed away on September 2, 2022, and did not participate in this opinion.  We acknowledge his faithful service to this Court.

E2015-02261-CCA-R3-CD, 2019 WL 453730, at *1-28 (Tenn. Crim. App. Feb. 5, 2019). Following the proof, the jury found the Petitioner guilty of two counts of first degree premeditated murder and one count of conspiracy to commit first degree murder. The trial court merged the conspiracy conviction and ordered concurrent life sentences for both murder convictions.

On direct appeal, the Petitioner argued that: (1) the trial court erred when it failed to grant her request for a change of venire; (2) the evidence was insufficient to support her convictions; (3) the criminal responsibility statute, Tennessee Code Annotated section 39-11-402, was unconstitutionally vague; and (4) the trial court erred when it failed to enjoin the prosecutor from publishing his book about this case until after the final adjudication of this case. *Id*. at *1. The State responded, and this court agreed, that the Petitioner's motion for new trial was untimely because it "was filed thirty-one days after the trial court filed its judgment[.]" *Id.* at *28-29. Accordingly, due to the untimeliness of the Petitioner's motion for new trial, this court determined that the Petitioner had "waived review of her objections to the trial court's denial of [her] request for a change of venire and refusal to enjoin the prosecutor from publishing a book before the final adjudication in [her] case." *Id.* at *29. Turning to the Petitioner's constitutionality challenge to the criminal responsibility statute, this court noted that the issue had likewise been waived due to the Petitioner's failure to raise it in the motion for new trial "unless the statute involved [was] so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Id.* (citing *Lawrence v. Stanford*, 655 S.W.2d 927, 29 (Tenn. 1983)). This court then observed that "this court ha[d] previously held the statute [was] not unconstitutionally vague" and that it, therefore, could not "conclude that the statute [was] 'obviously unconstitutional on its face.'" *Id.* (citing *State v. Justice Ball*, No. W2016-01358-CCA-R3-CD, 2017 WL 2482996 at *8 (Tenn. Crim. App. June 7, 2017)). Finally, after conducting a thorough analysis of the facts presented at trial, this court determined that the evidence was sufficient to support the Petitioner's convictions. *Id.* at *30-34.

The Petitioner timely filed a petition for post-conviction relief, and following the appointment of counsel, an amended petition was filed. Specifically, the Petitioner alleged that trial counsel was ineffective for failing to timely file a motion for new trial and notice of appeal, and she requested that she be granted a delayed direct appeal. At a subsequent status hearing, the parties discussed the recent ruling from our supreme court, *Howard v. State*, 604 S.W.3d 53 (Tenn. 2020). In *Howard*, our supreme court held when an ineffective assistance of counsel claim is based on counsel's deficient performance in failing to file a timely motion for new trial, prejudice is no longer presumed but instead should be analyzed under the *Strickland* standard to determine if there is a reasonable probability that counsel's deficient performance changed the outcome of the case. *Howard*, 604 S.W.3d at 63. Following this discussion at the status hearing, the Petitioner was required to file a revised pleading concerning her previously-announced intent to seek a delayed direct appeal and to specifically address *Howard*.

2

Thereafter, the Petitioner filed a second amended petition, maintaining that she was actually prejudiced by trial counsel's failure to timely file a motion for new trial. In this regard, the Petitioner noted that (1) this court, in its direct appeal analysis, did not find the proof against the Petitioner at trial to be overwhelming; (2) trial counsel's deficiency prohibited the Petitioner from challenging the constitutionally of the criminal responsibility statute on direct appeal; and (3) "at least one" of her issues on direct appeal had the probability of success. She asserted that for these reasons, she was entitled to a delayed direct appeal. She also argued that both trial and appellate counsel were ineffective in failing to call the Petitioner's father as a witness, who was subpoenaed at trial but did not testify, because he would have corroborated her defense.

A joint evidentiary hearing was held with the Petitioner's mother, who had also filed a similar petition for post-conviction relief. Relative to a potential change in venire due to publicity, the Petitioner's mother's attorney testified that the prospective jurors were given extensive questionnaires before voir dire. He further stated that the jury questionnaires and voir dire did not leave him with the impression such a change was necessary.

The Petitioner presented testimony from her own counsel, who represented her both at trial and on appeal ("trial counsel"). Trial counsel testified that he had been licensed to practice in Tennessee since 2004. According to trial counsel, a large portion of his practice since 2013 had focused on criminal defense, and he had also once served as an Assistant Attorney General for the State of Tennessee, where he represented the State in over five-hundred appellate cases.

Trial counsel indicated that there were issues concerning the trial testimony of the Petitioner's father. Specifically, trial counsel noted that the jury was aware of the Petitioner's father's first-degree murder convictions in relation to this case, that the Petitioner's father had confessed to the police, that counsel was unsure exactly what the testimony of the Petitioner's father would have been given that he had been uncooperative, that the credibility of the Petitioner's father was questionable in light of his relationship with the Petitioner, and that the Petitioner was concerned for her father's health and did not want him to testify. Trial counsel observed that the defense presented an expert who testified to the Petitioner's low IQ and that she did not possess the cognitive capability to be a "criminal mastermind." Additionally, trial counsel testified that the Petitioner's defense theory was bolstered by Mr. Curd's testimony that there was no conspiracy between Mr. Curd and the Petitioner or her mother.

Trial counsel acknowledged that he filed the Petitioner's motion for new trial late and that, consequently, all her appellate issues except sufficiency of evidence and sentencing were waived on direct appeal. Trial counsel averred that he would have only included issues in the Petitioner's direct appeal that he believed had at least a reasonable probability of success. According to trial counsel, the Petitioner had several strong issues on direct appeal, and he opined that the Petitioner was prejudiced by his deficiency.

3

The Petitioner's mother testified that her attorneys had originally planned to call her husband to testify; however, but that on "the last day," she was told that they were not going to call her husband as a witness because it would have affected his appeal negatively. The Petitioner's mother felt like she had no say in the decision not to call her husband. The Petitioner testified that she initially wanted her father to testify. However, according to the Petitioner, trial counsel told her that her father had been diagnosed with cancer, so she changed her mind. The Petitioner also said that she received a letter from her father after trial, in which her father claimed that he would have testified had he been called as a witness; however, the Petitioner did not keep the letter. The Petitioner's father testified at the post-conviction hearing that he was ready to testify at his wife and daughter's trial and say that they were not involved in the killings, though his attorney had advised him not to do so.

Thereafter, the post-conviction court entered an order denying relief. The post-conviction court found that trial counsel's failure to file a timely motion for new trial was deficient performance. Addressing each of the waived appellate issues, the post-conviction court first noted that this court had previously rejected assertions that the criminal responsibility statute was void for vagueness and determined that, even if the issue had been properly preserved and presented to this court on appeal, it would not have entitled the Petitioner to relief. Second, the post-conviction court found that the prosecutor's book "was not published until February 9, 2016, after the jury trial in the case concluded and after the trial judge held a hearing on [the Petitioner's] untimely motion for new trial," and ruled that there was "no proof in the record to suggest the appellate judges took the book into account in disposing of [the Petitioner's] direct appeal." Again, the post-conviction court ruled that had the issue been properly preserved and presented on direct appeal, it would not have entitled the Petitioner to relief. Third, the post-conviction court pointed out that the voir dire transcript was not included in the appellate records for either the Petitioner or her mother and was absent from the post-conviction record as well. In addition, the post-conviction court observed that trial counsel was not questioned about the change of venire issue during the post-conviction hearing, and it further accredited the testimony from the Petitioner's mother's attorney that the prospective jurors were given extensive questionnaires before voir dire and that there was no cause for concern due to publicity. Accordingly, the post-conviction court determined that trial counsel's failure to preserve the Petitioner's appellate issues did not result in actual prejudice and that she, therefore, was not entitled to a delayed appeal.

Finally, the post-conviction court found that trial counsel was not ineffective in failing to call the Petitioner's father as a witness because she had not established that his testimony would have materially aided her defense. The court further determined that trial counsel's decision not to call the Petitioner's father was a reasonable one given his concerns over the content of the testimony of the Petitioner's father, the significant credibility issues, and the strength of other available defense evidence. This appeal followed.

4

## II. Analysis

On appeal, the Petitioner contends that she received the ineffective assistance of counsel due to trial counsel's failure to timely file her motion for new trial, thereby resulting in waiver of most of her issues on appeal, "one of which had at least a reasonable probability of success." The State responds that the post-conviction court properly determined that, even if trial counsel had sufficiently preserved the relevant issues for review, the outcome of the Petitioner's appeal would not have changed. We agree with the State. In addition, the Petitioner has seemingly abandoned any issue on appeal regarding trial counsel's decision not to call her father as witness, and the issue is, therefore, waived. *See* Tenn. R. App. P. 27(a); Tenn. Ct. Crim. App. R. 10(b).

A petitioner may request post-conviction relief by asserting grounds alleging that her conviction or sentence is void or voidable because it abridged her constitutional rights provided by the Tennessee or the United States Constitutions. T.C.A. § 40-30-103. To obtain post-conviction relief, a petitioner must prove the allegations of fact made in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "[Q]uestions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001) (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)). Additionally, appellate courts may not "substitute their own inferences for those drawn by the trial court." *Id.* (citing *Henley*, 960 S.W.2d at 579). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (citations omitted).

A criminal defendant has a right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to assistance of counsel inherently guarantees that counsel's assistance is "effective." *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). To prove that counsel was ineffective, a petitioner must show that (1) counsel performed deficiently and (2) such deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88. Because a petitioner must establish both deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

To demonstrate that counsel's deficient performance prejudiced the defense, a petitioner must prove "'a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.'" *Dellinger*, 279 S.W.3d at 294 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In other words, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. This analysis applies to claims that trial counsel failed to file a timely motion for new trial. *Howard v. State*, 604 S.W.3d 53, 55 (Tenn. 2020).

The Petitioner submits that the post-conviction court incorrectly found that she was not prejudiced by trial counsel's failure to timely file a motion for new trial. The Petitioner states both that she was "not required to show that the outcome of the appeal would have been different" and that there was "a reasonable probability that, but for counsel's professional errors, the result of the proceedings would have been different." As noted above, our supreme court in *Howard* has recently emphasized the requirement that to show prejudice a petitioner must undermine this court's confidence in the outcome of her case. *Howard*, 604 S.W.3d at 63. Accordingly, the proper analysis in this case is whether there is a reasonable probability that full consideration of the waived issues on direct appeal would have changed the outcome. *See State v. Christopher Demotto Linsey*, No. M2020-01126-CCA-R3-PC, 2022 WL 570820, at *4 (Tenn. Crim. App. Feb. 25, 2022), *perm. app. denied* (June 8, 2022).

Relative to her argument for prejudice, the Petitioner cites trial counsel's testimony that he would have only included issues in the Petitioner's direct appeal that he believed had at least a reasonable probability of success, that he believed the Petitioner had several strong issues on direct appeal, and that he thought the Petitioner was prejudiced by his deficiency. She concludes that, "[s]urely, there can be no question that [she] wished for [trial counsel] to preserve her post-trial and appellate remedies but was deprived of those remedies due to no fault of her own." However, these arguments did not address the directive from our supreme court in *Howard* relative to the Petitioner's establishing the requite prejudice. The Petitioner also fails to provide any legal authority or substantive argument to support her position that her issues raised on direct appeal, but waived due to trial counsel's deficiency, were meritorious. In fact, she fails to even mention or discuss these issues in any regard in the argument section of her brief. She states only that one of her appellate issues had "at least a reasonable probability of success," though she does not specifically designate to which issue she is referencing—whether it was the constitutionality of Tennessee's criminal responsibility statute, the trial court's failure to enjoin the prosecutor from publishing a book about the case until after the final adjudication of the case, or the trial court's failure to grant a change of venire.

What is more, to the extent that the Petitioner feels that the issues would have been meritorious, her position is not supported by legal authority. This court on direct appeal, though waiving the issue, observed that "this court ha[d] previously held the statute [was] not unconstitutionally vague" and that it, therefore, could not "conclude that the statute

[was] 'obviously unconstitutional on its face.'" *See Jenelle Leigh Potter*, 2019 WL 453730, at *29. The post-conviction court also noted that this court had previously rejected assertions that the criminal responsibility statute was void for vagueness. *See Justice Ball*, 2017 WL 2482996, at *8; *State v. George G. Thomas*, No. E2013-01738-CCA-R3-CD, 2015 WL 513583, at *28-30 (Tenn. Crim. App. Feb. 5, 2015).

Turning to the second waived issue, the Petitioner's claim regarding the publication of a book, the post-conviction court found that the prosecutor's book "was not published until February 9, 2016—after the jury trial in the case concluded and after the trial judge held a hearing on [the Petitioner's] untimely motion for new trial," and concluded that there was "no proof in the record to suggest the appellate judges took the book into account in disposing of [the Petitioner's] direct appeal." Nothing in the record preponderates against these findings.

Finally, relative to any issue with the jury venire, we note, as did the post-conviction court, that the Petitioner has failed to include a transcript of the voir dire in the record, either on direct appeal or now. Counsel for the Petitioner's mother testified that the questionnaire given to the prospective jurors was quite extensive and that he was not concerned with exposure of the venire due to publicity, and the post-conviction court credited this testimony. Accordingly, the Petitioner failed to establish her factual allegations in this regard.

The Petitioner has not met her burden of showing a reasonable probability that, but for trial counsel's error, full consideration of the waived issues on direct appeal would have changed the outcome of her case. Thus, the post-conviction court correctly determined that, even if these issues had been properly preserved in the motion for new trial, they would not have entitled the Petitioner to relief. In accordance with the standard set forth in *Howard*, the Petitioner has failed to establish that she was actually prejudiced by trial counsel's deficiency. She is not entitled to a delayed appeal.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

7