IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville May 20, 2025

## ANDRE BOWEN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 18-01853        Lee V. Coffee, Judge**

---

### No. W2024-01261-CCA-R3-PC

---

In 2019, a Shelby County jury convicted the Petitioner, Andre Bowen, of facilitation of first degree felony murder, attempted especially aggravated robbery, and possession of a firearm by a convicted felon. The trial court ordered him to serve an effective sentence of seventy-two years of incarceration. On appeal, this court affirmed his convictions and sentence. *State v. Bowen*, No. W2019-01210-CCA-R3-CD, 2021 WL 1400929, at *1 (Tenn. Crim. App. Apr. 13, 2021), *perm. app. denied* (Tenn. June 15, 2021). The Petitioner unsuccessfully sought relief pursuant to a writ of error *coram nobis*. *Bowen v. State*, No. W2022-00229-CCA-R3-ECN, 2022 WL 17408878, at *3 (Tenn. Crim. App. Dec. 5, 2022), *perm. app. denied* (Tenn. Mar. 8, 2023). The Petitioner then filed a petition for post-conviction relief contending that he had received the ineffective assistance of counsel. The post-conviction court dismissed the petition as untimely, and the Petitioner appeals offering multiple grounds for a due process tolling of the statute of limitations. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and MATTHEW J. WILSON, JJ., joined.

Andre Bowen, Hartsville, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Leslie Renee Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION
## I. Facts and Procedural History

This case arises from the August 5, 2015 shooting death of the victim, Susan McDonald. For this offense, a Shelby County grand jury indicted the Petitioner for first degree felony murder committed during the perpetration of or attempt to perpetrate a theft; first degree felony murder committed during the perpetration of or attempt to perpetrate a robbery; attempted especially aggravated robbery; unlawful possession of a firearm after having been convicted of a felony involving a crime of violence; and unlawful possession of a firearm after having been convicted of a felony drug offense.

## A. Trial

The Petitioner and his co-defendant went to trial, where it was established that shortly after 6:00 a.m. on August 1, 2015, the two men were looking for a license plate to steal because the co-defendant's temporary tag had expired. They saw the victim withdraw cash from a bank and decided to rob her. They followed her and, when the victim parked in her neighbor's driveway, the co-defendant exited his vehicle armed with a gun, approached the victim, and attempted to rob her. A struggle ensued after the victim produced her own weapon, and the co-defendant shot the victim in the head. The co-defendant returned to his vehicle, and he and the Petitioner fled the scene.

Memphis police officers collected surveillance footage captured on August 1, 2015, from a neighboring home. The surveillance footage showed a dark vehicle passing through the neighborhood around the time of the shooting. Though officers were unable to identify the occupants of the vehicle or its license plate number from the surveillance footage, the suspect vehicle was identified as a gray Lexus. After identifying the suspect's vehicle and receiving numerous tips, officers identified the co-defendant as a suspect. Thereafter, officers surveilled the co-defendant and saw him driving the gray Lexus. Officer Brad Webb stated the vehicle did not have tinted windows and that the co-defendant traded in the Lexus the following day.

The co-defendant was arrested and provided a statement to law enforcement implicating the Petitioner in the shooting. The Petitioner also provided a statement. The Petitioner denied being responsible for the victim's death but stated he knew who was responsible. He also stated he heard the gunshot that killed the victim. The Petitioner explained that on the morning of the murder, he and the co-defendant were driving a dark gray Lexus and planned to steal a car tag. The Petitioner denied seeing the victim anywhere before the shooting and denied that he and the co-defendant planned to rob the victim. Furthermore, the Petitioner stated he never saw the victim as he remained in the front

2

passenger's seat during the shooting. He explained as follows:

> Me and [the co-defendant] were just riding around, and, within a minute or two, I heard a lady holler, but the windows were up, and I can't say what she said. Then I heard a shot, and looked back, and saw [the co-defendant] running back to the car.

The Petitioner denied having a weapon but mentioned seeing a small, black handgun that day and stated no one else was with him and the co-defendant at the time of the shooting.

In his statement to police, the co-defendant denied seeing the victim prior to August 1, 2015, denied planning to rob the victim, denied shooting the victim, and denied being armed during the shooting, though he admitted to seeing a black, automatic handgun. The co-defendant admitted that, before the shooting, he was searching for a car tag because his temporary tag had expired, and he said he was present during the shooting but did not exit his vehicle. The co-defendant explained the shooting in further detail, as follows:

> Me and [the Petitioner] were just riding around, and we were looking to find a Lexus to steal the tag off of and put on my car. I just turned on a street, and then I seen a car on my right side. I stopped in the street, and she was straight across the street near her truck, and she hollered to get away from the car. I seen her in her purse, and it looked like she was trying to get something. And that's when she pulled out a gun and shot once, and we pulled off. I turned around at the end of the street and went to south Memphis and dropped [the Petitioner] off near Pond Street, and then I went home to my mom's.

Furthermore, in his statement, the co-defendant explained he traded in his Lexus because it had a bad transmission and admitted to telling a friend, Robert Knight, Jr., "some details" of what happened on August 1, 2015.

Mr. Knight testified that the co-defendant admitted to being involved in the victim's death during a conversation on August 1, 2015. Mr. Knight overheard the co-defendant say during a phone conversation, "it's on the news." As a result, Mr. Knight turned the television to the news and watched a report "about a homicide of a white older lady who was killed, who was murdered in her driveway, at, like, the crack of dawn or something like that." Mr. Knight also saw the co-defendant's "dark-colored Lexus" during the report. Mr. Knight questioned the co-defendant about the report, and the co-defendant responded, "we had to kill a mother f***er."

3

The co-defendant explained to Mr. Knight the events that led to the victim's death in further detail, stating that he initially saw the victim withdrawing cash at a bank and "they" decided to follow her in order to rob her. The co-defendant confirmed he was with another person, but Mr. Knight did not know the identity of that person. The co-defendant continued, stating the victim was parked in her driveway when "he pulled up at the house. He jumped out of the car . . . to snatch her purse, and it wasn't as easy as he thought it was going to be" because the victim had a gun. Ultimately, the co-defendant told Mr. Knight, "we shot [the victim]," but did not take anything from her. Another witness also testified that the co-defendant implicated himself in the murder.

After deliberation, the jury acquitted the Petitioner of first degree felony murder but convicted him of facilitation of first degree felony murder, attempted especially aggravated robbery, and two counts of unlawful possession of a firearm. The trial court merged the Petitioner's firearm convictions and imposed an effective sentence of seventy-two years.

After conviction, the Petitioner appealed contending that the evidence was insufficient to support his convictions and that the trial court erred when it sentenced him. *Bowen*, 2021 WL 1400929, at *1. We reviewed both issues and affirmed the Petitioner's convictions and sentence. *Id.*

## B. Error Coram Nobis

The Petitioner filed a Petition for Writ of Error *Coram Nobis* that claimed that he had discovered new evidence that was not available or discoverable before his trial and that this evidence might lead to an acquittal of the charges. The petition claimed that Petitioner's trial counsel first became aware of possible evidence in August of 2020, when the Petitioner told him that the Petitioner had talked by phone with the co-defendant and that the co-defendant told the Petitioner that he had made statements at his sentencing hearing that might aid the Petitioner. Trial counsel asked to speak with the co-defendant, but the co-defendant's counsel would not permit him to speak to the co-defendant while his appeal was pending. The Tennessee Supreme Court denied the co-defendant's Rule 11 Application on September 21, 2020. *Bowen*, 2022 WL 17408878, at *3.

Attached to the petition was an affidavit from an investigator who claimed that she was on a conference call in which the co-defendant said that the Petitioner was asleep in the car during the murder and did not know it was occurring. Also attached was an affidavit from the co-defendant that confirmed his statement to the investigator.

The State asked that the petition be summarily dismissed because the information

4

was not newly discovered. *Id*. at *1. The trial court agreed and dismissed the petition. The Petitioner appealed, and this court affirmed the summary dismissal. The trial court concluded that the co-defendant was not credible. It further concluded that the co-defendant's statements contradicted the Petitioner's statements to police that the co-defendant pulled over the vehicle in which the two were riding, stopped, took out a gun from the glove box, and left with that gun, all shortly before the Petitioner heard a lady "holler." *Id*. at *6.

### C. Post-Conviction

On March 1, 2024,[1] the Petitioner filed a petition for post-conviction relief, in which he alleged that he had received the ineffective assistance of counsel. The post-conviction court summarily dismissed the petition, finding that the statute of limitations had expired on June 15, 2022, and that the Petitioner had filed his petition twenty-one months after the statute expired and included no grounds that would allow the court to waive the statute of limitations based upon due process considerations. *See* T.C.A. § 40-30-102.

After summarizing the relevant law on due process considerations, the post-conviction court noted that the Petitioner alleged that he was unable to file a post-conviction petition because he chose not to file an appeal of the Rule 11 denial by the Tennessee Supreme Court to grant a discretionary appeal. The post-conviction court found that this was "simply untrue." The court found that the Petitioner had ample time to file a timely petition and that his petition was filed almost three years after the denial of the discretionary appeal. The post-conviction court found that there were no grounds for a tolling of the statute of limitations and that it lacked jurisdiction to proceed. The court dismissed the Petitioner's petition for post-conviction relief.

It is from the post-conviction court's judgment that the Petitioner now appeals.

### II. Analysis

The Petitioner contends on appeal that the post-conviction court erred when it dismissed his petition for post-conviction relief as untimely. He asserts that he did not know that there were laws governing appellate procedure and was misinformed by an attorney about the filing deadline. He further asserts that his sentence length of seventy-two years warrants a due process analysis despite the lapse of the statute of limitations. He also contests the trial court's finding that he had not been diligently pursuing his rights.

---

[1] The Petitioner's petition was received on March 25, 2024, but the Petitioner had it in the prison mailbox on March 1, 2024. Pursuant to Tennessee Rule of Civil Procedure 5.06, we will consider his filing dated March 1, 2024.

Finally, he states that the trial court erred when it did not inquire as to whether the cause of the untimely petition was his error or an attorney's error.

The statute of limitations related to the filing of post-conviction petitions is set forth in Tennessee Code Annotated section 40-30-102(a). That section provides:

> [A] person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

*Id.*

The Petitioner's judgment of conviction was entered on March 8, 2019. This court issued its opinion in the Petitioner's direct appeal on April 13, 2021. The Petitioner sought permission to appeal to our supreme court, which was denied June 15, 2021. Thus, the statute of limitations commenced the following day, on June 16, 2021, and Petitioner had one year from that date to file a petition for post-conviction relief. *Id*. The statute of limitations expired on June 16, 2022. The petition was not filed until March 1, 2024. The Petitioner's petition was untimely by twenty-one months.

An untimely post-conviction petition divests the post-conviction court of subject matter jurisdiction and is subject to summary dismissal. *See* T.C.A. §§ 40-30-102(b); -106(b). There are exceptions to the statute of limitations for petitions for post-conviction relief set forth in statute. *See, e.g.*, T.C.A. § 40-30-102(b). The Petitioner does not allege that any of these exceptions apply in his case, arguing instead that theories of due process tolling and other due process considerations apply to his attempt to toll the statute of limitations for post-conviction relief. The Tennessee Supreme Court set forth a two-prong test for determining whether tolling of the statute of limitations is warranted:

> A petitioner is entitled to due process tolling upon a showing (1) that

6

he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing.

*Whitehead v. State*, 402 S.W.3d 615, 631 (Tenn. 2013) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see Bush v. State*, 428 S.W.3d 1, 22 (Tenn. 2014) (stating that the *Holland* test adopted in *Whitehead* applies to all claims of due process tolling).

The Tennessee Supreme Court has identified three circumstances in which due process requires tolling of the statute of limitations: (1) claims arising after the statute of limitations has expired; (2) claims based on mental incompetence that prevented the petitioner from complying with the statute of limitations; and (3) claims based on attorney misconduct. *Whitehead*, 402 S.W.3d at 623-24. So, to succeed, a petitioner must provide sufficient facts that prove one of these limited circumstances affected the filing of his or her post-conviction petition. *Williams v. State*, No. W2011-00202-CCA-R3-PC, 2011 WL 2410364, at *1-2 (Tenn. Crim. App. June 9, 2011), *perm. app. denied* (Tenn. Oct. 18, 2011). To comply with due process, post-conviction petitioners must be afforded an opportunity to seek post-conviction relief "at a meaningful time and in a meaningful manner." *Buford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). Absent sufficient facts establishing a petitioner is entitled to due process tolling, an untimely petition must be dismissed. *Id*. "The question of whether the post-conviction statute of limitations should be tolled is a mixed question of law and fact that is . . . subject to *de novo* review." *Id.* at 621 (citing *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011)). Despite reviewing the post-conviction court's decision de novo, we are bound by the post-conviction court's factual findings unless the evidence preponderates to the contrary. *Id.* at 10 (citing *Whitehead,* 402 S.W.3d at 621; *Dellinger v. State,* 279 S.W.3d 282, 294 (Tenn. 2009*))*.

The Petitioner did not argue in his post-conviction petition that due process required the tolling of the statute of limitations, nor did he present any evidence that would support such a claim. On appeal, the Petitioner contends for the first time that due process necessitates a tolling of the statute of limitations. The Petitioner's argument for due process tolling amounts to a contention that his sentence length was significant enough to warrant a due process analysis and that he was misinformed by an unnamed attorney that his writ of error coram nobis tolled the statute of limitations. The Petitioner does not cite to the record and has presented these issues for the first time on appeal. Though we afford leniency to pro se petitioners, *see Gable v. State*, 836 S.W.2d 558, 559-60 (Tenn. 1992) (citations omitted), issues are still waived if not presented to the trial court. *Holland*, 610 S.W.3d at 457 (stating "[a]n issue is considered waived, and no longer grounds for relief, if the petitioner . . . fails to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented, with two limited

exceptions," both of which do not apply here). Therefore, the Petitioner has waived our review of his due process claims.

Further, contrary to the Petitioner's assertions, the length of his sentence does not alone necessitate review pursuant to due process concerns. The aforementioned law governing when due process review is required still applies. Finally, the Petitioner's bare assertions that an unnamed attorney told him that he did not need to file his post-conviction petition until one year after his coram nobis appeal was final does not meet the requirements necessary for review pursuant to due process.

Accordingly, we conclude that the Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_s/ *Robert W. Wedemeyer*__
ROBERT W. WEDEMEYER, JUDGE